On January 9, 1998, defendant, Kenneth Whatley, was tried, convicted, and sentenced by the Franklin County Court of Common Pleas to serve a total of nine years for felonious assault. Defendant's conviction was the result of a near fatal shooting which occurred on the evening of May 20, 1997. The events leading up to that shooting occurred as follows.
At approximately 6:30 p.m. on May 20, 1997, defendant, defendant's girlfriend Tracy Allen, and Tracy's daughter Rachel Allen, were involved in an oral exchange with the victim, Shedderick Thompson. The confrontation occurred outside defendant's residence and was the result of two earlier confrontations between the Allens, and Thompson's girlfriend, Pamela Boyd.
At the time of the shooting, the Thompson and Whatley families lived on opposite sides of Hallidon Avenue.[1] However, Thompson's family was in the process of moving into a new home a short distance away. During the morning and afternoon of May 20, 1997, Pamela Boyd was packing her family's belongings with the help of her neighbor and friend, Neecy Johnson. In the meantime, Boyd's children, Johnson's daughter Tiana, and defendant's son, Jamar Whatley, were playing in the backyard with the family dog. According to Boyd, Jamar was observed mistreating the dog. Boyd testified that when she became aware of that fact, she asked that the dog be put inside the house. For reasons that were not made clear at trial, this seemingly innocuous incident led Rachel Allen to accuse Boyd of having Jamar beaten up by some of the neighborhood children. Rachel, age 14, confronted Boyd, age 31, with her accusations. While each claimed the other landed the first blow, it is clear that the two became involved in a physical altercation which was broken up by defendant.
The incident with Boyd prompted defendant to contact Rachel's mother at work. After discussing the matter, defendant picked Tracy Allen up, and the two went back to their home where they then contacted the Columbus Police. According to Tracy, the police officer dispatched to defendant's home instructed her that she would have to obtain Boyd's new address and contact the prosecutor's office if she wanted to press criminal charges against Boyd. With that in mind, defendant, Tracy and her daughter followed Boyd to her new home in order to get Boyd's new address. While there, Boyd and Tracy Allen exchanged words and became involved in a second physical altercation.
Shedderick Thompson had been at work during the course of the preceding events but left early after receiving a telephone call from Boyd that there had been trouble at home. Thompson initially went to the family's home on Hallidon Avenue. However, seeing no one, Thompson went over to Neecy Johnson's house where he spoke with Boyd on the telephone. It was then that Boyd told Thompson of the altercations with Tracy and Rachel Allen.
After speaking with Boyd, Thompson crossed the street to defendant's home to discuss why the families had been fighting. According to the trial testimony of Thompson and Tiana Johnson, Thompson merely walked across the street to speak with defendant's family. According to defendant, however, Thompson crossed the street yelling for Tracy Allen to come out of the house. In any event, the meeting between Thompson and the members of defendant's family quickly deteriorated. As Thompson approached defendants home, defendant, Tracy and Rachel Allen, and Tracy's brother, Terrance Allen, came out of defendant's home and engaged Thompson in a heated verbal exchange. By Thompson's account, shortly into the verbal exchange, defendant pulled out a 10mm Smith Wesson semi-automatic handgun and pointed it in his direction. Thompson testified that as soon as defendant pulled the gun, he began to retreat and pleaded with defendant not to shoot. Thompson testified that he was not armed, and that he did not threaten or lunge at defendant in any way. However, within moments, defendant shot Thompson with a hollow-point bullet that entered his abdomen and traveled downward, fragmenting in his upper left thigh. After being shot, Thompson remained conscious until an ambulance arrived. However, he later lapsed into a coma for three weeks. Ultimately, Thompson recovered from his injuries, but only after much of his left leg was amputated, and only after months of medical treatment and rehabilitation.
From the beginning, defendant admitted responsibility for the shooting, claiming that he had been threatened by Thompson. Defendant continued his claim of self-defense at trial, arguing that Thompson had lunged at him with a knife. After being indicted by the Franklin County Grand Jury, defendant was convicted of felonious assault with a firearm specification in violation of R.C. 2903.11. Following a pre-sentence investigation, defendant was sentenced to eight years plus one additional year for having committed an offense with a firearm. Defendant now appeals, raising the following five assignments of error.
 FIRST ASSIGNMENT OF ERROR: The court erroneously failed to instruct the jury on aggravated assault as an offense of lesser degree to felonious assault.
 SECOND ASSIGNMENT OF ERROR: The court erroneously responded to a jury question seeking a definition of the phrase "in his home," which was used in the instructions on self-defense.
 THIRD ASSIGNMENT OF ERROR: The court erroneously admitted gruesome photos depicting the victim's injuries, the element of physical harm or serious physical harm not being a matter in contention.
 FOURTH ASSIGNMENT OF ERROR: Appellant received ineffective assistance of counsel.
 FIFTH ASSIGNMENT OF ERROR: The evidence established that as a matter of law appellant acted in self-defense. In the alternative, the evidence established the mitigating factor differentiating felonious assault and aggravated assault as a matter of law.
In his first assignment of error, defendant argues that the trial court erred when it failed to instruct the jury on the elements of the offense of aggravated assault. As noted, defendant maintains that he shot Thompson in self-defense. Specifically, defendant asserts that Thompson was the aggressor and that he came at defendant with a two and one-half to three-inch long knife. Though defendant concedes the jury's ability to reject his claim of self-defense, defendant now argues the jury might have reasonably found that he acted under the influence of sudden passion or in a sudden fit of rage thereby reducing the instant offense from felonious assault to aggravated assault. However, a review of the record reveals that defendant failed to request an instruction on aggravated assault and instead agreed with the jury instructions as given by the trial court.
It is well-settled that an appellate court need not consider alleged error which a complaining party failed to call to the attention of the trial court at a time when such alleged error could have been avoided or corrected. Crim.R. 30(A). However, an exception to this rule of law has been carved out in Crim.R. 52(B) which permits "[p]lain errors or defects affecting substantial rights [to] be noticed although they were not brought to the attention of the court."
Plain error is error but for the occurrence of which it can be said that the outcome of the trial would have clearly been otherwise. State v. Underwood (1983), 3 Ohio St.3d 12, 14. As recognized by the Ohio Supreme Court, the plain error doctrine should be applied sparingly, and only when necessary to prevent a clear miscarriage of justice. State v. Wolery (1976), 46 Ohio St.2d 316,327. Succinctly, if it cannot be shown that the outcome of the trial would clearly change given the "proper" instruction, the failure to object to a jury instruction constitutes a waiver of any claim thereto. Underwood, syllabus.
In Ohio, there is a presumption that the failure to request an instruction on a lesser included offense constitutes a matter of trial strategy and does not by itself establish plain error or the ineffective assistance of counsel. State v.Griffie (1996), 74 Ohio St.3d 332, citing State v. Clayton
(1980), 62 Ohio St.2d 45. Stated another way, tactical decisions, even ones which in hindsight reveal themselves to be poor ones, do not constitute either plain error or the ineffective assistance of counsel. State v. Hill (1996),75 Ohio St.3d 195.
In this case, defendant offers little more than mere speculation that the jury might have convicted defendant of aggravated assault if given the chance. Having thoroughly reviewed the matter we are unable to conclude that the instructions given by the court, and in particular the fact that an instruction on aggravated assault was not given by the court, constituted plain error. Under the circumstances, we find that defendant undertook a particular trial strategy and lost. Without more, defendant will not now be allowed to relitigate his conviction.
In his second assignment, defendant contends the trial court committed error when it responded to a jury question concerning the meaning of the phrase, "in his home." The record reveals that after the jury began its deliberation, its members asked the court if there was a "legal definition" of the phrase "in his home." After consultation with counsel for both parties, the court responded that there was not. Defendant now argues that it was plain error for the court to fail to go beyond its answer and to explain to the jury that under the facts of some cases, the front porch and steps of a home have been included in that definition.
In this case, the trial court properly concluded that there is no legal definition of the phrase "in his house." Nonetheless, defendant argues that "it should have been obvious" that the jury wondered whether the term was limited to the interior of defendant's house or whether it also encompassed the front porch. Defendant goes on to argue that the trial court "should have responded that they [the jury] should give the term its common meaning, and in light ofState v. Williford [(1990), 49 Ohio St.3d 247], should have specifically stated that the porch of a dwelling is included." (Defendant's brief at 26.) We respectfully disagree.
We find no legal or otherwise compelling reason to conclude that the trial court's decision not to speculate on the "true" nature of the jury's question constituted plain error. In this case, the jury asked a specific question. Both counsel and the court reached the correct decision, and returned a specific answer. In light of the court's proper instruction that a defendant is under no duty to retreat from his home, the "failure" of the court to answer what defendant now argues to have been the jury's real question, did not constitute plain error. Indeed, as recognized by the defendant, "where, during the course of deliberations, a jury requests further instructions, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." State v. Carter (1995), 72 Ohio St.3d 545, paragraph one of the syllabus. Accordingly, defendant's second assignment of error is overruled.
In his third assignment of error, defendant argues the trial court erred when it allowed photographs of Thompson's injuries to be shown to the jury. In this case, the trial court admitted five photographs into evidence. One of those photographs depicted the yard and front of defendant's home. The other four photographs depicted the injuries sustained to Thompson's leg and abdomen.
The admissibility of evidence is the province of the trial court. As such, the trial court's admission or exclusion of evidence will not be reversed on appeal absent an abuse of discretion amounting to an unreasonable, arbitrary, or unconscionable ruling. State v. Morales (1987), 32 Ohio St.3d 252. Moreover, the mere fact that photographs depict images which are disturbing or prejudicial to a defendant is not sufficient to render the photographs inadmissible as a matter of law. State v. Biros (1997), 78 Ohio St.3d 426. Rather, the probative value of the photographic evidence must be weighed against the danger of unfair prejudice in order to reach a determination on the issue of admissibility. Id. at 444-445. See, also, Evid.R. 403.
Upon review of the photographic evidence and the events at trial, we find the photographs were illustrative of Thompson's testimony concerning the nature and extent of his injuries suffered as a result of the shooting. Although unpleasant, the photographs were few in number. Moreover, having reviewed the photographs, we are unable to conclude that their probative value was substantially outweighed by the danger of unfair prejudice to the defendant. Accordingly, defendant's third assignment of error is overruled.
In his fourth assignment of error, defendant argues that he received ineffective assistance of trial counsel. The test for judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial process cannot be relied upon as having produced a just result. Strickland v. Washington
(1984), 466 U.S. 668. In order to establish that he has been denied the effective assistance of counsel, defendant must show: (1) that his trial counsel's performance fell below an objective standard of reasonable representation, and (2) that he was prejudiced by such performance. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus, certioraridenied (1990), 497 U.S. 1011. To establish prejudice, defendant must demonstrate that there "exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. The United States Supreme Court, in Strickland,supra, at 687, has explained:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
The Court went on to observe that counsel will be "strongly presumed" to have rendered adequate representation, and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689.
In State v. Frazier (1991), 61 Ohio St.3d 247, 253, the Ohio Supreme Court explained:
 * * * [T]he Strickland court strongly cautioned courts considering the issue of ineffective assistance of counsel that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" * * *
As noted earlier, the failure to request a jury instruction on a lesser-included offense is generally presumed to constitute a matter of trial strategy, not ineffective assistance of counsel. Griffie, supra, at 333. In other words, tactical decisions, even ones that in hindsight reveal themselves to be poor decisions, fail to establish ineffective assistance of counsel. Hill, supra.
Having reviewed the matter, we are unable to conclude that the performance of defendant's trial counsel fell below an objective standard of reasonable representation, or that defendant was materially prejudiced by counsel's alleged substandard performance. Under the circumstances, we do not believe that counsel's decision to forego an instruction on the lesser included offense of aggravated assault was either clearly unreasonable or that a reasonable probability exists that the result of the trial would clearly have been different but for defense counsel's decision to forego the instruction. Rather, the decision not to request such an instruction strongly appears to have been a matter of trial strategy and not a mistake attributable to defense counsel's incompetence. Therefore, defendant's fourth assignment of error is overruled.
In his fifth assignment of error, defendant argues the evidence adduced at trial established, as a matter of law, that defendant acted in self-defense. Alternatively, defendant asserts that the evidence shows that he was provoked and acted under a sudden fit of rage.
Although not explicitly stated, defendant essentially argues the jury's verdict was against the manifest weight of the evidence.
 * * * When the manifest weight of the evidence is the issue, the evidence is not construed most strongly in favor of the state. Instead, the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. See State v. DeHass, (1967), 10 Ohio St.2d 230. This test is stated in the second paragraph of the syllabus of State v. Eskridge (1988), 38 Ohio St.3d 56, as being "a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonable conclude that all the elements of an offense have been proven beyond a reasonable doubt."
State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437, 5438).
Upon consideration of the record as a whole, we find the evidence presented at trial sufficient to support a finding by a rational trier of fact that all of the elements of felonious assault had been proven beyond a reasonable doubt. In arguing this assignment of error, defendant reargues those points presented in the trial of this matter to the jury. Specifically, defendant argues that he was not at fault in creating the confrontation between Thompson and the members of his family. Defendant goes on to assert that he perceived Thompson placed him in imminent danger of death or great bodily harm, and that he believed that Thompson intended to draw a knife from his coat pocket.
Upon consideration of the evidence, we note that the jury was free to reject the version of events presented by, defendant and to accept the testimony presented by plaintiff's witnesses. Specifically, Thompson, Tiana Johnson, Rachel Allen, Tracy Allen, and Terrance Allen, all testified that they did not see Thompson brandish a knife, threaten, or lunge at defendant as defendant claims. In addition, the patrol officers who secured the scene and the members of the Columbus Police Department's Crime Scene Search Unit stated that, with the exception of defendant's semi-automatic pistol, no other weapons were found on Thompson or in the area of the shooting. Finally, plaintiff effectively cross-examined defendant and Rachel Allen concerning their failure to make any mention of defendant having a knife or other weapon in their statements given immediately after the shooting.
In this case, the jury acted within its province when it chose to disbelieve defendant's story. Having carefully considered the record as a whole, we are unable to find that their decision to do so was against the manifest weight of the evidence. Stated alternatively, we find there is sufficient competent, credible evidence to support the jury's finding that defendant unjustifiably shot and wounded Shedderick Thompson, and that his act in doing so constituted felonious assault. Accordingly, defendant's fifth assignment of error is overruled.
For the foregoing reasons, defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and KENNEDY, JJ., concur.
[1] Hallidon Avenue is located on the near east side of the city of Columbus.