THE STATE OF OHIO, APPELLEE, *v.* MORALES, APPELLANT.

[Cite as State *v.* Morales (1987), 32 Ohio St. 3d 252.]

(No. 86-1927—Decided September 2, 1987.)

*John T. Corrigan,* prosecuting attorney, and *Michael S. Nolan,* for appellee.

*Charles R. Laurie, Jr.,* for appellant.

DOUGLAS, J. The instant appeal presents this court with numerous issues concerning appellant's convictions and the penalty of death which was subsequently imposed. For the reasons discussed *infra,* we affirm the judgment of the court of appeals in all respects and uphold appellant's death sentence.

Appellant's first proposition of law challenges the trial court's refusal to grant a mistrial following an emotional outburst by the victim's brother during the trial. Appellant argues that the emotional outburst[5] by Jesse Trevino,

[5] "[THE COURT] Listen to the question, Mr. Morales, and answer the question.

"Q. [BY MR. NOLAN, prosecuting attorney]: You knew that there was a problem between your son Alfred Morales and Jesse Trevino, correct?

"A. Nope.

"Q. That is not correct?

"A. No sir.

"JESSE TREVINO: You're lying. There was a problem, man. Shit, don't —

which occurred during cross-examination of appellant's father, was inflammatory, prejudicial and deprived him of a fair trial. We disagree.

This court has previously discussed the standard for determining whether an emotional outburst during a murder trial by a spectator related to the victim improperly influences the jury. In *State* v. *Bradley* (1965), 3 Ohio St. 2d 38, 32 O.O. 2d 21, 209 N.E. 2d 215, this court stated as part of the syllabus:

"Whether an emotional demonstration in the courtroom during the course of a murder trial by a spectator related to the victim improperly influences the jury against the accused[,] * * * constitute[s] misconduct so as to deprive the accused of a fair trial * * * [is a question] of fact to be resolved by the trial court, whose determination thereon will not be disturbed on review in the absence of evidence contrary to that determination clearly and affirmatively appearing on the face of the record."

In reaching this conclusion, we stated that "* * * the trial judge had the occasion, which is given neither to * * * [this court] nor to the Court of Appeals, to gauge the totality of the impact upon the jury of the spectator's demonstration." *Id.* at 40, 32 O.O. 2d at 22, 209 N.E. 2d at 216. Absent clear evidence in the record that the outburst improperly affected the jury, only the trial judge can authoritatively determine whether the jury was disturbed, alarmed, shocked or moved by the demonstration or whether the incident was of such a nature that it necessarily influenced the ultimate verdict of conviction. *Id.* The answer to those questions invariably depends upon facts and circumstances which a reviewing court cannot ordinarily glean from the record.

Thus, the trial court determines, as a question of fact, whether the demonstration deprived the defendant of a fair trial by improperly influencing the jury. In the absence of clear, affirmative evidence to the contrary, the trial court's determination will not be disturbed. *State* v. *Bradley, supra.* Here, the judge admonished the jury to disregard the occurrence and, in addition, found that Jesse Trevino's outburst was not prejudicial. There being no clear, affirmative evidence to the contrary, that determination will not be disturbed. Accordingly, appellant's first proposition is without merit.

In propositions of law numbers two and seven, appellant attacks the sufficiency of the evidence supporting his conviction of kidnapping and the corresponding specification. Appellant contends that the trial court erred in failing to grant his motion for judgment of acquittal at the close of the state's evidence. In support of this contention, appellant argues that "* * * [t]here was absolutely no evidence that a kidnapping had taken place," and that "* * * [t]he mere fact that the murder took place in a remote area does not make * * * [appellant] guilty of kidnapping or the specification of kidnapping." Appellant's argument is without merit.

A motion for acquittal should be granted only "* * * if the evidence is insufficient to sustain a conviction * * *" for the offense or offenses with which the defendant is charged. Crim. R. 29(A). "[A] court shall not order an entry of judgment of acquittal [pur-

---

hey, he's lying, Mr. Nolan. He's lying. You better get him off that stand.

"MR. NOLAN: I apologize to the Court, Your Honor, and the jury.

"MR. DAMIANI [defense counsel]: Your Honor, may we approach the bench?

"THE COURT: Yes."

suant to Crim. R. 29(A)] if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proved beyond a reasonable doubt." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, syllabus. A careful review of the record herein reveals that the evidence presented by the state was such that reasonable minds could differ as to whether each of the elements of kidnapping was proved beyond a reasonable doubt.

Appellant was convicted of kidnapping in violation of R.C. 2905.01(A) and aggravated murder in violation of R.C. 2903.01(B) with the specification of committing the aggravated murder while committing, after committing or fleeing from the commission of kidnapping in violation of R.C. 2905.01(A).

R.C. 2905.01(A) provides that "[n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, *by any means,* shall remove another from the place where he is found or restrain him of his liberty * * *" (emphasis added) for certain enumerated purposes.

This section prohibits a person, with the intent to commit one of the enumerated acts, from either removing or restraining another from liberty by force, threat or deception. Yet, no such active conduct is required when the victim is a child under the age of thirteen. When considering a child of such tender years, the removal or restraint is prohibited *by any means.* The Committee Comment to R.C. 2905.01 illustrates particularly well the divergent standards to be applied when considering the kidnapping of an adult versus the kidnapping of a child under the age of thirteen:

"Force, threat, or deception is generally required to commit the offense, as when the victim is bodily carried off, frightened into going along, or decoyed away. The lack of discretion in a child or incompetent person, however, dictates the exception. For example children are often abducted merely by accepting rides from strangers, and *under this section it makes no difference whether the child* or incompetent *voluntarily accompanies the kidnapper* or submits to restraint." (Emphasis added.)

Accordingly, while a child under the age of thirteen may be kidnapped by or through the use of force, threats or deception, such conduct *is not* essential to a conviction. A violation of this section may be found even where the child voluntarily accompanies the kidnapper or submits to restraint provided one of the enumerated purposes is likewise found to have existed.

Mario was twelve years of age when the offense was committed. Therefore, force, threat or deception was not essential, as appellant would have us hold, for appellant to commit the offense of kidnapping. However, even were such evidence required to support a kidnapping conviction in this case, the record reveals that appellant in fact utilized deception to persuade Mario to accompany him.

The record reveals that appellant had, both before and after his release from the Mansfield Reformatory, threatened the entire Trevino family which, of course, included Mario. Additionally, the Trevino family was well aware of appellant's desire for revenge against them individually and as a unit. Further, appellant was observed, just days before the killing, watching the Trevino house from the bushes of a nearby home. Therefore, given this background, reasonable minds could conclude that appellant had, by deception and subterfuge, decoyed the boy to his death when he confronted his victim at the beverage store, told his victim that he wished to discuss the

problem between appellant and the Trevino family and then led his victim to the secretive location.

While, because of Mario's age, evidence of deception is not required to prove removal or restraint for purposes of a conviction for kidnapping, such evidence does provide support for the jury's finding of the required purpose element as set forth in R.C. 2905.01(A)(2) and (3). R.C. 2905.01(A) provides in pertinent part:

"No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:

"* * *

"(2) To facilitate the commission of any felony or flight thereafter;

"(3) To terrorize, or to inflict serious physical harm on the victim or another."

Our review of the record reveals significant evidence supporting appellant's conviction under either or both of these subsections. From the evidence described *supra,* the jury could reasonably conclude beyond a reasonable doubt that appellant removed Mario from the place where he was found for the purpose of committing a felony or of inflicting serious physical harm. Therefore, we find that the evidence presented at trial was sufficient to support a finding that each element of the kidnapping offense was proven beyond a reasonable doubt. Appellant's motion for acquittal was properly denied.

Accordingly, we hold that the kidnapping of a child under the age of thirteen, in violation of R.C. 2905.01, by any means including deception, for the purpose of committing any felony or inflicting serious physical harm on the victim, is sufficient to satisfy the specification and aggravating circumstance of kidnapping for aggravated murder pursuant to R.C. 2903.01(B) and 2929.04(A)(7).

In appellant's third proposition of law, appellant asserts that he was denied due process of law and a fair trial when the trial court permitted into evidence "gruesome photographs" of the victim's body. Appellant contends that "[t]he admission in evidence, over objection of defense counsel, of these photographs of the murder victim was an abuse of discretion in that these photographs were so gruesome that they could tend to unreasonably inflame the jury against the defendant." We do not agree.

When considering the admissibility of photographic evidence under Evid. R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. See *State* v. *Tingler* (1972), 31 Ohio St. 2d 100, 103-104, 60 O.O. 2d 81, 83-84, 285 N.E. 2d 710, 713; *State* v. *Rahman* (1986), 23 Ohio St. 3d 146, 152, 23 OBR 315, 320, 492 N.E. 2d 401, 407. The admission or exclusion of such photographic evidence is left to the discretion of the trial court. *State* v. *Hill* (1967), 12 Ohio St. 2d 88, 41 O.O. 2d 369, 232 N.E. 2d 394, paragraph two of the syllabus; *State* v. *Wilson* (1972), 30 Ohio St. 2d 199, 203-204, 59 O.O. 2d 220, 222, 283 N.E. 2d 632, 636; *State* v. *Tingler, supra.* Accordingly, a trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence. Absent such danger, the photograph is admissible.

However, in *capital* cases, this court has, in *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768, set forth a stricter evidentiary standard for the introduction of

photographs. In *Maurer, supra,* this court held in paragraph seven of the syllabus that:

"Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, *as long as the danger of material prejudice to a defendant is outweighed by their probative value* and the photographs are not repetitive or cumulative in number." (Emphasis added.)

Thus, the emphasis that a trial judge must apply in meeting an Evid. R. 403 objection has changed in capital cases. To be admissible in a capital case, the probative value of each photograph must outweigh the danger of prejudice to the defendant and, additionally, not be repetitive or cumulative in nature. Contrary to the Evid. R. 403 standard, where the probative value must be minimal and the prejudice great before the evidence may be excluded, pursuant to *Maurer, supra,* if the probative value does not, in a simple balancing of the relative values, outweigh the danger of prejudice to the defendant, the evidence must be excluded. See the insightful discussion of Professor John W. Palmer in his Ohio Rules of Evidence Desk Manual (1986), at 169. See, also, *State* v. *Mann* (1985), 19 Ohio St. 3d 34, 38, 19 OBR 28, 32, 482 N.E. 2d 592, 597; *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 129, 19 OBR 330, 336, 483 N.E. 2d 1157, 1164; and *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 19, 23 OBR 11, 16, 490 N.E. 2d 906, 910.

Concededly, more than a few of the photographs in the case now before us are gruesome. Yet, "the mere fact that a photograph is gruesome or horrendous is not sufficient to render it *per se* inadmissible." *State* v. *Maurer, supra,* at 265, 15 OBR at 401, 473 N.E.

2d at 791; *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 25, 35 O.O. 2d 8, 14, 215 N.E. 2d 568, 577. Therefore, provided the probative value of each photograph in the case at bar outweighs its prejudicial impact and the photograph is neither repetitive nor cumulative in nature, its admission as evidence will not be disturbed as an abuse of discretion by the trial court.

The photographs in the case *sub judice* depict the scene of the murder, the victim's body before and during the coroner's examination and the cuts and abrasions present on appellant's hands and knuckles. Each of these photographs illustrated testimony of state witnesses concerning the murder site, the cause of death and appellant's liability therefore. As we stated in *Maurer, supra,* at 265, 15 OBR at 401, 473 N.E. 2d at 791, "[s]uch illustrative photographs are generally admissible." See, also, *State* v. *Rahman, supra,* at 152, 23 OBR at 320, 492 N.E. 2d at 407. Further, the photographs concerning the victim's injuries were probative with regard to the showing of intent and deliberation on the part of appellant.

On balance, we find that the gruesome photographs admitted as evidence in appellant's trial, while numerous, were neither repetitive nor cumulative in nature. Additionally, their probative value outweighed the danger of unfair prejudice to appellant, thereby satisfying the *Maurer* standard. Likewise, the dictates of Evid. R. 403 have been satisfied since the probative value of the photographs was not substantially outweighed by their prejudicial, if any, effect. Appellant's proposition of law is overruled.

We pause to caution that our decision herein does not condone the use of excessive photographic evidence in capital cases. As stated *supra,* photographs in capital cases are scrutinized by a stricter standard.

While we have found no prejudicial effect of the photographs admitted in the case at bar, this does not infer that the same result will occur in other cases. Such determination is made on a case-by-case basis. We raise this concern on the basis that a limited number of gruesome photographs were utilized in *State* v. *Maurer, supra,* a substantially greater number were entered into evidence in *State* v. *Thompson* (1987), 33 Ohio St. 1, 514 N.E. 2d 407, a large volume were utilized in the case now before us and varying numbers have been found in other capital cases which have been or are being reviewed by this court. We strongly caution judicious use of this type of evidence so that any question of probative value, as compared to cumulative, repetitious and prejudicial effects, will be avoided.

Appellant's fourth, fifth and sixth propositions of law challenge the constitutionality of the statutory scheme for imposing the death penalty in Ohio. Appellant initially argues that a proof-beyond-all-doubt standard is required before the death penalty may be imposed and, therefore, would have us find the current proof-beyond-a-reasonable-doubt standard insufficient and infirm. This court has previously rejected that argument in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 210-211, 15 OBR 311, 350-351, 473 N.E. 2d 264, 304-305; *State* v. *Maurer, supra,* at 248, 15 OBR at 387, 473 N.E. 2d at 779; *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 136, 22 OBR 203, 213, 489 N.E. 2d 795, 806; *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 22, 23 OBR 13, 19, 490 N.E. 2d 906, 913; and *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 105, 26 OBR 79, 90, 497 N.E. 2d 55, 66. Appellant has not persuaded us to alter our present position.

Appellant also contends that requiring proof of aggravating circumstances in the guilt stage of the bifur-cated death penalty trial violates both the United States and Ohio Constitutions. We have previously rejected this argument in *State* v. *Jenkins, supra,* at 173, 15 OBR at 319, 473 N.E. 2d at 277; and *State* v. *Buell, supra,* at 137, 22 OBR at 214, 489 N.E. 2d at 807. In *State* v. *Buell, id.,* we stated that "* * * no presumptive bias is created in favor of the aggravating factors by requiring their proof beyond a reasonable doubt in the guilt phase. [Indeed,] [w]hether a sentencing phase is needed at all rests upon this predetermination." Moreover, to hold as appellant asks us to hold would require prosecutors to indict a party, pursuant to R.C. 2929.021, 2929.022, 2929.03 and 2929.04, with the statutorily mandated aggravating circumstances, and then prohibit the introduction of evidence concerning that element of the indictment during the guilt phase of the trial. Such a holding defies both logic and the statutory framework set forth by the Ohio Legislature. Accordingly, for the reasons set forth in *Jenkins, supra,* and *Buell, supra,* this proposition is without merit.

Appellant further argues that imposition of the death penalty under R.C. 2929.03 and 2929.04 violates his Eighth Amendment protection against cruel and unusual punishment. While the United States Supreme Court has found the death penalty not violative of the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia* (1976), 428 U.S. 153, 187, and this court has additionally found Ohio's statutory scheme consistent with Sections 9 and 16, Article I of the Ohio Constitution, see *Jenkins, supra,* at 167-174, 15 OBR at 314-320, 473 N.E. 2d at 272-277; *State* v. *Maurer, supra,* at 241-242, 15 OBR at 380-382, 473 N.E. 2d at 773-775; *State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 154-155, 25 OBR 190, 199, 495 N.E. 2d 407, 415-416; *State v. Glenn* (1986), 28 Ohio St. 3d

451, 452, 28 OBR 501, 502, 504 N.E. 2d 701, 704; and *State* v. *Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585, we feel compelled to discuss appellant's assertions in light of the particularly heinous character of appellant's actions in murdering Mario.

In support of his contentions, appellant states:

"Necessarily every punishment contains an element of cruelty. * * * [Yet,] when the level of cruelty is disproportionate to the crime, and consequently does not serve the needs of society, a court will find the punishment to be too cruel and, thus cruel within the term of art in the cruel and unusual punishment clauses." (Citations omitted.)

Notwithstanding our agreement or disagreement with appellant's contention, the Ohio Legislature has, as a matter of policy, decided that the death penalty serves society's needs in Ohio. Additionally, both this court and the United States Supreme Court have decided that the imposition of the death penalty is, in its current narrow statutory framework, neither excessive nor unconstitutional. *Gregg* v. *Georgia, supra,* and *Jenkins, supra.* Appellant now, in essence, argues that the death penalty is disproportionate to the particular crime that he committed. We disagree.

Appellant contends that "[t]he actual physical and psychological pain of execution itself is immeasurable." Additionally, appellant says that "[a] convicted felon suffers extreme mental and physical anguish is [*sic*] anticipation of his execution. 'The tremendous mental strain of inexorably approaching a foreordained death is unique to the condemned man.'" (Citations omitted.)

Against appellant's purported mental and physical anguish, we consider and balance the savage execution of a twelve-year-old boy, fully six inches shorter and one hundred twenty-seven pounds lighter than appellant, and society's right and need to prevent this type of horrendous conduct. There is no disproportionality in the instant case when we consider the fear, pain and horror that unquestionably filled the last moments of Mario Trevino's life.

Appellant plotted, planned and lured a young boy to his certain death. Upon reaching a secluded location, appellant coldly and cruelly began beating the boy to death. During the course of this "execution," appellant knocked the boy down a hill, pulled the boy up again, and once again began systematically beating the life from his victim.[6] The ultimate example of the savagery and sadistic nature of appellant's conduct is revealed in one incident where the appellant was holding his victim in a headlock, grabbed the victim by the hair and physically tore a large section of hair and scalp from the victim's skull — the boy was, in effect, scalped.

Accordingly, if punishment is the penalty for crime, no penalty, including the death penalty, can be too cruel for what this appellant did to this twelve-year-old boy. We find appellant's Eighth Amendment argument not well-taken.

We now turn our attention to the independent weighing process required by R.C. 2929.05(A)[7] to deter-

---

[6] See fn. 1 for a description of the internal injuries that were sustained by Mario Trevino as a result of this beating.

[7] R.C. 2929.05(A) states in pertinent part:

"Whenever sentence of death is imposed pursuant to sections 2929.03 and 2929.04 of the Revised Code, the court of appeals and the supreme court shall upon appeal review the sentence of death at the

mine whether the aggravating circumstance that appellant was found guilty of committing outweighs the mitigating factors in this case.

The aggravating circumstance found to exist herein was kidnapping. Appellant presented no witnesses in the penalty phase of this proceeding or any evidence in mitigation. The only "evidence" for the defense was an unsworn statement by appellant, in which appellant expressed regret for his actions, apologized to the Trevino family and expounded upon his troubled childhood and history of alcoholism.

R.C. 2929.04(B) provides that, in weighing the mitigating factors, the sentencing authority "shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

"(1)  Whether the victim of the offense induced or facilitated it;

"(2)  Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3)  Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4)  The youth of the offender;

"(5)  The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6)  If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7)  Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

We find that, of the above enumerated factors, numbers (1), (2), (3) and (6) do not exist under these facts. Number (4) is not compelling, as appellant was almost twenty-two years old at the time of the offense, substantially beyond the age of majority. As to factor number (5), appellant's past history of criminal convictions or delinquency adjudications cannot be characterized as insignificant. Therefore, this factor will be afforded no weight in our balancing herein. *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383.

As to factor number (7), we have considered all the evidence of appellant's unfortunate childhood and his struggle with alcoholism.[8] Our view of the totality of the evidence compels us

---

same time that they review the other issues in the case. The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender

was found guilty of committing outweigh the mitigating factors in the case * * *."

[8] Appellant asserted that he had been an alcoholic since his early youth. Additionally, appellant argued unsuccessfully at his trial that as a full-blooded Shoshone Indian, he possessed an enzyme deficiency such that alcohol affected him in a different manner than those of Anglo-Saxon ancestry. We find the evidence in the record conflicting on the issue of

to conclude that the aggravating circumstance of kidnapping outweighs these combined mitigating factors beyond a reasonable doubt.

Likewise, our consideration of "the nature and circumstances of the offense, the history, character, and background of the offender" do not alter this conclusion. The nature and circumstances of this offense are so horrendous that it would be difficult to imagine factors that might be mitigating. The history, character and background of the offender have already been explored *supra,* and we find that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt. The mitigating factors are deemed insufficient on the basis that the evidence demonstrates that appellant's personal history did not impair his capacity to appreciate the wrongfulness of his conduct or to control his actions. *State* v. *Steffen, supra.*

R.C. 2929.05 requires that, in addition to weighing the aggravating circumstances and the mitigating factors, this court review the proportionality of death sentences. The purpose of this review is to determine whether the penalty of death is unacceptable in the case under review because it is disproportionate to the punishment imposed upon others convicted of the same crime. *Pulley* v. *Harris* (1984), 465 U.S. 37; see, also, *State* v. *Steffen, supra.*

Discharging our mandated duty, we find that compared with other capital cases decided by this court, the sentence herein is neither excessive nor disproportionate. The penalty of death has previously been imposed in cases involving kidnap-murder, and the sentences have been upheld as appropriate. *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 17 OBR 414, 478 N.E. 2d 984, and *State* v. *Maurer, supra.* These cases are similar to the case now before us in that each involved terrorizing and even torturing the minor victims by beating and/or sexual assault before ultimately murdering them. As stated *supra,* we find the sentence of death neither excessive nor inappropriate in the case *sub judice* given its facts and its similarity to other cases which have resulted in a sentence of death.

In conclusion, we uphold appellant's convictions and sentence of death. We are persuaded from our review of the record that appellant received a fair trial and a thorough review by the court of appeals. We are convinced that the sentence of death is appropriate under the facts of this case.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

HERBERT R. BROWN, J., concurring. I join in the judgment, syllabus and opinion. I write separately because the opinion states that a proof-beyond-all-doubt standard is not required before a death penalty may be imposed. This may be a correct statement

---

appellant's purported diminished capacity at the time of the murder. Fully seven witnesses, including a police officer, observed and talked with appellant shortly after the murder had occurred. Not one of the seven recalls appellant being intoxicated. Additionally, appellant's actions on the evening in question tend to reveal a man who was alert and conscious of his actions and speech. Accordingly, we will not disturb the jury's finding that appellant did not suffer from a diminished capacity to form the requisite intent to commit murder on the evening in question.

of the law, but I do not want my assent to that principle of law to be misconstrued. In every capital case, each of us must independently consider the appropriateness of the death penalty. The responsibility is not only to guard against error, but also to make a *de novo* determination. In discharging that responsibility I believe that *any* doubt concerning the defendant's guilt is a legitimate matter for our consideration.