[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This is an intra-family dispute over money. Scott T. McDermott now appeals from a judgment given to his parents after a jury trial in Fulton County Court of Common Pleas. The appellees were awarded $66,900 plus ten percent annual interest from June 14, 2002 for breach of contract against their son. The amount advanced was used to pay off a mortgage on a residence owned by Scott in Lyons, Ohio and to remodel the residence. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} William F. McDermott and Linda R. McDermott sued Scott T. McDermott and his wife Susan M. McDermott on October 16, 2000 for breach of oral contract. The defendants both filed motions for judgment on the pleadings.[1] Unsuccessful on his motion for judgment on the pleadings, Scott filed a motion for summary judgment, arguing that the statute of frauds barred the complaint because it was an alleged oral agreement affecting an interest in land. On March 11, 2002, the trial court denied the motion for summary judgment, and a jury trial was held June 13 and 14, 2002. The jury returned a verdict in favor of the parents. Scott raises the following three assignments of error:
 {¶ 3} "I. The trial court erred to the prejudice of the Appellant, Scott T. McDermott by denying his motion for summary judgment."
 {¶ 4} "II. The trial court erred to the prejudice of the Appellant, Scott T. McDermott by admitting, over objection, hearsay statements from a declarant not called to testify at trial."
 {¶ 5} "III. The decision of the trial court entering judgment for appellees was against the manifest weight of the evidence."
The First Assignment of Error
 {¶ 6} Scott filed a summary judgment motion on grounds that the statute of frauds barred his parents' complaint for breach of an oral agreement affecting an interest in real estate. The alleged oral agreement was that his parents would give him the money to pay off his mortgage in exchange for his promise to sell the real estate for repayment, and that since no writing was ever executed, the statute of frauds voided the agreement. The motion was denied by the trial court.
 {¶ 7} In reviewing any disposition of a summary judgment motion, this court must apply the same standard as the trial court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 8} Ohio's statute of frauds, R.C. 1335.05, provides that no action shall be brought against a person upon a contract or sale of land or interest in or concerning land, unless the agreement is in writing. Nevertheless, the equitable doctrines of partial performance and promissory estoppel can remove an agreement covering an interest in real property from the operation of the statute of frauds. Saydell v.Geppetto's Pizza Ribs Franchise Sys., Inc. (1994),100 Ohio App.3d 111, 121. These exceptions recognize that the historical purpose behind the statute is to prevent the furtherance of fraud.McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt.,Inc. (1993), 87 Ohio App.3d 613, 623.
 {¶ 9} To remove an oral contract from the operation of the statute of frauds, part performance "must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in statu quo." Delfinov. Paul Davies Chevrolet, Inc. (1965), 2 Ohio St.2d 282, 287. Thus, a party relying upon part performance must demonstrate acts were performed in exclusive reliance on the oral contract, and that the acts prejudicially changed the party's position. Geiger v. Geiger (Nov. 16, 1993), Montgomery App. No. 13841.
 {¶ 10} It is undisputed that Scott received and benefitted from a substantial amount of money from his parents. He sought summary judgment on grounds that the complaint was barred by the statute of frauds as a matter of law because the alleged oral contract for a loan involved a promise by him to sell the real estate to repay his parents. The material issue in this case was whether the money was a gift or a loan. If the money was a gift, there was no contract. If the money was a loan, then by giving him the money, Scott's parents did what they promised to do. In return, they expected to be repaid when Scott sold the house and relied upon this expectation in advancing the money. Under the loan scenario, part performance prevents the application of the statute of frauds.
 {¶ 11} When the evidence is construed in favor of the non-moving party, the parents, we find the motion for summary judgment was properly denied, The trial court did not err when it found that the competing characterizations of the money transfer was a genuine issue of material fact.
 {¶ 12} Scott's first assignment of error is, therefore, not well-taken.
The Jury Trial
 {¶ 13} The next two assignments of error relate to the jury trial in this case. As noted, the issue was whether the money the McDermott parents gave to their son, Scott, was a loan or a gift.
 {¶ 14} The parents testified that they loaned Scott $18,000 for remodeling work to be done on a house he had purchased in Lyons, Ohio, with a V.A. loan. William McDermott testified that his son approached him and asked for a loan. After discussion between the parties, Linda McDermott stated that on February 14, 1997, she withdrew $21,000 from Fifth Third Bank, kept $3,000 for a personal investment and deposited $18,000 into Scott's account at National City. Because Scott was moving to Columbus and was making plans to marry, his parents told him and his fiancee that they would assume house payments and the remolding project to allow then to get on their feet financially. The Lyons house would be sold within a year so that the parents could be repaid.
 {¶ 15} Scott's parents paid the November and December mortgage payments. Linda McDermott testified that because the interest on the loan was high, she proposed that she and her husband pay off the mortgage on the Lyons house in its entirety. Scott did not object, and his parents paid off the V.A. loan in January 1999. In December 1999, Scott moved back from Columbus, and the following June, his parents asked him to sign a mortgage to secure their interest in the property. Scott refused to sign and according to William, their son eventually told his parents they would have to sue him to get their money back.
 {¶ 16} Linda McDermott's sister and Scott's aunt, Patricia Robinson, also testified. In a phone conversation in August 2000, Scott explained that his father wanted him to pay $1,000 a month on a loan, which he could not afford. He admitted to his aunt several times that he had borrowed money from his parents for his house.
 {¶ 17} Scott testified that he purchased the house in Lyons, Ohio in April 1997 with a V.A. loan. He did not dispute that his parents paid two of his mortgage payments and paid the balance of the V.A. loan in January 1999. Nor did he dispute that his parents provided him with $14,000 in the fall of 1998 to complete a remodeling job to his house. Scott, however, characterized the money from his parents as a gift. He stated that before his parents gave him the $14,000 he asked his father if they could afford to give him the money, and his father assured him that they could. Scott testified to a similar conversation with his mother near the time that his parents paid off the V.A. loan. According to Scott, the money changed from being a gift to a loan after he confronted his father regarding a domestic dispute between his parents in February 2000. Scott also denied that he ever admitted to his aunt that he owed his parents money.
A. Second Assignment of Error
 {¶ 18} In the second assignment of error, Scott argues that the trial court erred in allowing his mother, Linda McDermott, to read into evidence part of a letter written to her by her trust and estate attorney. During trial, both Linda McDermott and William McDermott were asked to read a passage from a letter dated October 4, 1999 from their attorney that stated "With regard to the $66,000 loan to Scott, instead of * * *." The letter itself was not admitted into evidence. Scott objected to this evidence only during Linda McDermott's testimony.
 {¶ 19} The admission or exclusion of evidence is left to the sound discretion of the trial court. State v. Morales (1987), 32 Ohio St.3d 252,257. A written or oral out-of-court statement, offered into evidence to prove the truth of the matter asserted is considered inadmissible hearsay, unless the statement falls within a hearsay exception. See Evid.R. 801, 802. Scott's parents argue that the statement was not offered to prove the truth of the matter, but rather to establish their state of mind on the date the letter was written. (i.e., that the money advanced was a loan, not a gift.)
 {¶ 20} Evid.R. 803(3) provides that the following is excluded from the hearsay rule: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will."
 {¶ 21} In this case, the letter was an out-of-court statement by the parents' trust and estate attorney who recited information provided to him by the parents in October 1999. The proffer of this evidence during Linda McDermott's testimony appears to be an anticipatory rebuttal of Scott's assertion that the money suddenly changed from being a gift to a loan after Scott's confrontation with his father in February 2000. However, the evidence does reflect Linda McDermott's state of mind as it relates to the preparation of her will and her intent regarding the cash transfer as early as October 1999. Accordingly, we do not believe that the trial court erred in admitting this testimony under Evid.R. 803(3).
 {¶ 22} Even if the trial court did incorrectly allow the admission of this evidence, it could not be considered prejudicial error. Any error in the admission of hearsay is generally harmless when the declarant is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature. See State v. Tomlinson (1986), 33 Ohio App.3d 278,281. Given the fact that parents were present in court and subject to full cross-examination on the statements they made to their attorney, we find that error, if any, in the admission of Linda McDermott's testimony regarding the letter is indeed harmless. Scott's second assignment of error is therefore not well-taken.
B. Third Assignment of Error
 {¶ 23} Scott's third assignment of error challenges the jury's verdict as being against the manifest weight of the evidence. Scott again argues that the statute of frauds requires a writing and that it is undisputed that there never was any written agreement. Scott also argues that his mother's apparent confusion as to whether she and Scott's father would be receiving the title to the property demonstrates that there was never a meeting of the minds.
 {¶ 24} We first note the proposition that we must defer to the trial court as the finder of fact. The trial court was in the best position to view the witnesses, observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Accordingly, a reviewing court should not substitute its judgment for that of the trial court. Id. The decision of the trier of fact, be it the judge or jury, will not be reversed as being against the manifest weight of the evidence as long as it is supported by some competent, credible evidence going to each of the essential elements of the case. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus; Vogel v. Wells (1991), 57 Ohio St.3d 91,96.
 {¶ 25} Keeping the above standard in mind, we conclude that there was competent, credible evidence from which the jury could reasonably find that the money was a loan. Scott himself testified about the original conversation with his mother and stated the plan was that his parents would "just basically take [the mortgage] completely over, that more or less I would just hand her the keys and walk away and be done with it." The property was never transferred to his parents; this testimony, however, belies Scott's contention that the money was always a gift until the confrontation with his father. While Scott gives his aunt's testimony little weight, it cannot be said that the jury was required to do so. She was the only independent witness, and the jury could well have believed that Scott acknowledged the existence of a loan.
 {¶ 26} Scott's third assignment of error is, therefore, not well-taken.
 {¶ 27} Upon consideration, we find that substantial justice was done the party complaining. The judgment of the Fulton County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Richard W. Knepper, J., Judith Ann Lanzinger, J., CONCUR.
[1] Susan's motion for judgment on the pleadings was eventually granted by the trial court after remand by this court.