OPINION
{¶ 1} Defendant, Patrick Clark, appeals from his conviction and sentence for murder and having weapons while under disability.
 {¶ 2} On June 6, 2003, Defendant shot and killed his aunt, Patricia Durham, with an assault rifle that Defendant claimed was his favorite gun. Defendant was legally prohibited from owning or possessing any gun because of his previous conviction for a felony of violence.
 {¶ 3} Defendant shot his aunt inside his home. Defendant's next door neighbor, Wallace Davis, heard two loud bangs. Moments later, Davis heard Defendant's front storm door slam. Davis looked outside and saw Defendant standing on his front porch. Defendant said: "Is this what you wanted, is this what you wanted me to do?" Defendant then walked across his yard and out into the street, where he pounded with his fists on passing vehicles and yelled: "Everyone should die. I'm ruling the world. I killed my wife and I'm going to kill you too." After a short time Defendant was struck and seriously injured by a passing vehicle. While trying to get up off the ground, Defendant at one point laughed and said he had killed her.
 {¶ 4} Police and medics responded to the accident scene, which was on Klepinger between Michigan and Burgoyne, in Harrison Township, Montgomery County, Ohio. Defendant was agitated, uncooperative, and combative. He fought with police and medics, telling them, "You're going to have to shoot or kill me. I'm leaving." Defendant would not give his name. Defendant's next door neighbor, Mr. Davis, was at the scene and he told police where Defendant lived. When police arrived at Defendant's residence they found the body of Defendant's aunt. She had been shot once in the head and once in the chest. The murder weapon, Defendant's assault rifle, was next to the body. A subsequent atomic absorption test revealed gunpowder residue on the palms and back of Defendant's hands in quantities consistent with firing a weapon.
 {¶ 5} Defendant was indicted on one count of murder, R.C.2903.02(B), with an accompanying three year firearm specification, R.C. 2941.145, and one count of having weapons under disability, R.C. 2923.13(A)(2). Defendant was found guilty following a jury trial of all charges and specifications. The trial court sentenced Defendant to consecutive prison terms of one year for having weapons under disability, fifteen years to life for murder, and three years for the firearm specification, for a total of nineteen years to life.
 {¶ 6} We permitted Defendant to file a delayed appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 7} "THE TRIAL COURT ERRED BY NOT INSTRUCTING THAT THE JURY MUST FIND THE DEFENDANT WAS CONVICTED OF A PREVIOUS FELONY BEFORE BEING ABLE TO FIND HIM GUILTY OF HAVING WEAPONS UNDER DISABILITY."
 {¶ 8} Defendant was found guilty of having weapons under a disability in violation of R.C. 2923.13(A)(2). That section provides that no person shall knowingly acquire, have, carry or use any firearm if the person has been convicted of any felony offense of violence. Defendant argues that because the verdict form did not require the jury to make a separate finding that he had previously been convicted of a felony offense of violence, his conviction for having weapons under disability violates the rule of Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403.
 {¶ 9} Blakely holds that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutorily prescribed maximum may not be found by the court, but must either be admitted by the accused or found to exist beyond a reasonable doubt by a jury. The particular finding that Defendant claims the jury should have been required to make, the fact that Defendant was previously convicted of a felony offense of violence, relates not to sentencing but to guilt or innocence, and is expressly exempted by Blakely from those facts that must be either admitted by a defendant or found by a jury. Therefore, no Blakely violation is shown.
 {¶ 10} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 11} "APPELLANT ASSERTS INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 12} In order to demonstrate ineffective assistance of trial counsel, Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 13} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance.Id. Moreover, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.
 {¶ 14} Defendant first argues that his trial counsel performed deficiently when he made a Crim.R. 29 motion for judgment of acquittal but declined to argue in support of the motion. On this record, there would have been no basis to grant the motion. No prejudice is demonstrated.
 {¶ 15} Defendant also argues that his trial counsel performed deficiently when in his opening statement he told the jury:
 {¶ 16} "And we — took great pain yesterday in trying to select a jury of his peers. And we did. What you must remember is that — and this will be short. We do not have the burden. What you must remember is that what they have just told you all is circumstantial. We're going to need something more. Hold back. Hold back on this case until you hear the last person — could be the last person — Patrick testify. Hold back. Don't rush to an opinion because you have received this same thing thus far that they have presented to the grand jury. They came out with the indictment. Must mere allegations. State wasn't there. Nobody was there. But one person who is now alive. And that's Patrick.
 {¶ 17} "And Patrick will testify. He will testify. He will tell you `I loved my aunt.' He will testify that she was over to the house on that day. He will testify that they met on a regular basis. Only lived a few blocks away. She kept the keys to his house. She kept her car in the garage. This was a man who loved his aunt.
 {¶ 18} "So what happened? What happened on June the 6th? What happened on June the 6th? We can speculate all we want. But in order for you to hear a complete picture, you must hear from Patrick. And he will address you in our case.
 {¶ 19} "Please keep an open mind. An open mind. Thank you." (T. 302-303).
 {¶ 20} The record does not reflect whether Defendant had told his attorneys that he intended to testify. However, on the third day of trial, counsel represented to the court that after "considerable conversation with him concerning today's trial and his possible testimony" the night before, "when (Defendant) arrived over here this morning and (sic) going over different things that he does not want to testify." (T. 762). The court then inquired of Defendant whether it was his wish not to testify and Defendant affirmed that it was. (T. 763-765).
 {¶ 21} During his closing argument, Defendant's attorney told the jury:
 {¶ 22} "I come to you and I apologize, `cause I told you that Mr. Clark would testify. And now he is going to stand on that constitutional right not to. I apologize. I was wrong. And I did not try to mislead you in any way. I simply was wrong. And I admit that." (T. 824).
 {¶ 23} In its instructions, the court told the jury:
 {¶ 24} "It is not necessary that the defendant take the stand in his own defense. He has a constitutional right not to testify. The fact that the defendant did not testify must not be considered for any purpose." (T. 849).
 {¶ 25} A strong presumption of correctness operates in favor of trial counsel's performance, and the accused therefore bears the burden of proving an ineffective assistance claim.Strickland. To do that a defendant must produce evidentiary documents containing operative facts sufficient to demonstrate both the lack of competent counsel and that he was prejudiced by his counsel's ineffectiveness. State v. Jackson (1980),64 Ohio St.2d 107.
 {¶ 26} The record fails to demonstrate either that Defendant had told his attorneys prior to trial that he did not wish to testify or that the matter was as yet unresolved when counsel said in his opening statement that Defendant would testify. It was Defendant's burden to demonstrate one or the other of those propositions. Jackson. Absent such proof, the presumption of counsel's competence requires us to reject the suggestion that he was unsure whether Defendant would testify or knew that he would not when he told the jury Defendant would testify. Further, juries are presumed to follow the instructions the court gives.State v. Loza (1994), 71 Ohio St.3d 61. Therefore, the instruction the court gave was likely to dispel any prejudice to Defendant that accrued from counsel's promise. Finally, counsel's apology to the jury helps avoid such prejudice. Ineffective assistance is therefore not shown.
 {¶ 27} The evidence of Defendant's guilt was overwhelming. Defendant's next door neighbor heard two loud bangs coming from Defendant's home and then observed Defendant leaving his residence. Defendant walked out into the street where he yelled at people in passing cars that "he had killed her" or "he had killed his wife." Defendant's aunt was found shot to death inside Defendant's home a short time later. She had been shot twice. The murder weapon, Defendant's favorite gun, was found next to his aunt's body. Atomic absorption tests revealed gunpowder residue on Defendant's hands in sufficient quantities to be consistent with firing a weapon.
 {¶ 28} Given this evidence, there is no reasonable probability that Defendant would have been acquitted even if he had taken the stand and testified that he did not kill his aunt. Ineffective assistance of counsel is not demonstrated.
 {¶ 29} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 30} "THE CONVICTION SHOULD BE REVERSED BECAUSE THE CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 31} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 32} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 33} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 34} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 35} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 36} In arguing that his conviction is against the manifest weight of the evidence, Defendant contends that the evidence demonstrates that his behavior was irrational and his statements were unintelligible and unreliable. We note that Defendant did not assert that he was either incompetent to stand trial or insane. Furthermore, Defendant's pretrial challenge to his statements as being involuntary was rejected by the trial court, and Defendant has not appealed that issue.
 {¶ 37} The question presented is whether the inferences which Defendant contends are derived from the evidence are as persuasive or believable as the competing inference that Defendant is guilty of committing these offenses as charged because he committed them with the degree of culpability prescribed. In that regard we have already pointed out that the evidence of Defendant's guilt is overwhelming. On that matter we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 38} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 39} "THE TRIAL COURT ERRED BY ALLOWING HIGHLY PREJUDICIAL PICTURES WITH LITTLE OR NO PROBATIVE VALUE BEFORE THE JURY."
 {¶ 40} Defendant argues that the trial court erred in admitting over his objection autopsy photographs of the victim's body that were repetitive and cumulative, gruesome, and lacked probative value.
 {¶ 41} In State v. Reeves (March 12, 1999), Montgomery App. No. 16987, this court stated:
 {¶ 42} "In determining the admissibility of a photograph under Evid.R. 403, `a trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence.'State v. Morales (1987), 32 Ohio St.3d 252, 257,513 N.E.2d 267. Absent such a danger, the photograph is admissible. Id. at 257, 513 N.E.2d 267. `[T]he fact that a photograph may be considered gruesome is not, in and of itself, grounds for preventing its introduction into evidence.' State v. Apanovitch
(1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394. The trial court has broad discretion in balancing the probative value against the danger of unfair prejudice, and its determination will not be disturbed on appeal absent a clear abuse of discretion. State v.Harcourt (1988), 46 Ohio App.3d 52, 55, 546 N.E.2d 214."
 {¶ 43} Defendant first complains about State's Exhibit 1, which is a photograph of the right side of the victim's clothed body as it was received at the coroner's office. This photograph was offered by the State along with another photo depicting the left side of the victim's body (State's Exhibit 2) to demonstrate that the gunshot entrance wounds were confined to the right side of the body. State's Exhibit 1 is not repetitive or gruesome, and its probative value is not substantially outweighed by the danger of unfair prejudice.
 {¶ 44} State's Exhibit 4 is a photograph of the brain of the victim after it was removed from the skull. Defendant argues that this photograph is an overly gruesome and graphic display that has no probative value. We disagree. This photo was offered to show the hemorrhaging of the brain that occurred as a result of the gunshot wound to the head, and how that related to the path of the bullet. While gruesome, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.
 {¶ 45} State's Exhibit 6 is a "close-up" photograph of the left side of the victim's head which depicts various injuries to the face/neck area. Defendant argues that this photograph is repetitive and cumulative because State's Exhibit 5 also depicts the left side of the victim's head. However, State's Exhibit 6 shows in greater detail the injuries resulting from the path of the bullet as it went through the head and exited the victim's body. Thus, State's Exhibit 6 is not merely cumulative and its probative value is not substantially outweighed by the danger of unfair prejudice.
 {¶ 46} State's Exhibit 9 is a photograph depicting the injury to the right lung caused by the bullet passing through it. Defendant argues that this evidence has no probative value. We disagree. The photograph demonstrates the path of the bullet after it entered the victim's right chest and fractured her ribs. The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.
 {¶ 47} Finally, State's Exhibit 11 is a close-up photograph of the bullet exit wound in the right upper back. Defendant argues that this evidence is repetitive and cumulative because State's Exhibits 10 and 12 also show that same exit wound. Once again, however, State's Exhibit 11 shows in greater detail the exit wound and particularly the "peripheral abrasion collar" around that exit wound which suggests that some object was lying up against the victim's back, similar to a couch cushion, and offered some resistance to the bullet as it exited. Thus, State's Exhibit 11 is not merely cumulative and the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.
 {¶ 48} It was not unreasonable for the trial court to conclude that the autopsy photographs Defendant complains about would assist the jury in understanding the testimony of Dr. Russell Uptegrove, the deputy coroner who performed the autopsy on the victim, regarding the injuries suffered by the victim and the results of Dr. Uptegrove's examination of the body. No abuse of discretion on the part of the trial court in admitting this evidence has been demonstrated.
 {¶ 49} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. and Young, J., concur.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.