OPINION
Appellant Barton Schilling appeals his conviction, in the Tuscarawas County Court of Common Pleas, for two counts of rape, one count of statutory rape with force or a threat of force, one count of rape with force or a threat of force and two counts of gross sexual imposition. The following facts give rise to this appeal.
In 1979, appellant married Vanessa Breal. The marriage ended in divorce in 1985. Three children were born as issue of the marriage: Rachel Schilling in 1979; April Schilling in 1981; and Amanda Schilling in 1983. From 1985 until 1988, Vanessa Breal had custody of the three minor children. In accordance with the visitation schedule, the children stayed with appellant, in New Philadelphia, every other weekend. During these visits, appellant began molesting Rachel and April. When Rachel was approximately eight years old appellant placed pornographic shows on the television and told Rachel that he wanted to engage in similar activity with her. In his bedroom, appellant began fondling Rachel's private parts and placed his penis between her legs and moved back and forth.
Appellant began molesting April when she was seven years old. Appellant also molested April in his bedroom by fondling her vagina, caressing her body and placing his penis between her legs and moving back and forth until he ejaculated. Appellant did not place his penis in her vagina. Appellant told April that if she told anybody about his conduct he would kill April's mother and then April and her sisters.
In 1988, appellant obtained custody of his three daughters. Appellant moved to a house located in Gnadenhutten, Ohio. On alternate nights, appellant forced either Rachel or April to sleep with him. Amanda, the youngest child, observed both Rachel and April sleeping with appellant. Appellant had a nightly routine when he molested Rachel. First, Rachel would have to get into the bathtub with him and bathe him. While in the bathtub, appellant would place his fingers in her vagina.
Subsequently, Rachel would put on a body suit, with a snap crotch, go into appellant's bedroom, take off her clothes and wait for appellant. When appellant arrived, he kissed Rachel, fondled her breasts and forced her to engage in cunnilingus and fellatio. Appellant forced Rachel to swallow when he ejaculated. When Rachel turned thirteen, appellant attempted to place his penis in Rachel's vagina. Because of the pain it caused Rachel, he did not complete the act. However, on at least three occasions, appellant anally penetrated Rachel with his penis. Appellant also engaged in vaginal and anal intercourse, with Rachel, in other rooms of the house. Rachel submitted to the abuse because she was afraid of appellant due to his bad temper.
Appellant also continued to molest April while in his custody. Appellant would sleep with his stomach against April's back and place his penis between her legs and engage in forward thrusts until he ejaculated. On one occasion, when appellant purchased a new couch he had April stay home from school so he could "break-in" the new couch by performing this sex act with her. Appellant also sucked on April's breasts and performed cunnilingus on two occasions. April also submitted to this abuse because she was afraid of appellant.
In 1992, both Rachel and April attended two custody hearings where they testified. They did not disclose the sexual abuse at either hearing. They also did not disclose the abuse to their guardian ad litem, Amanda Bornhorst. After appellant received a transcript from the first hearing, he instructed the girls how to testify at the second hearing. In July 1992, the trial court awarded custody of the girls to Vanessa Breal. However, Rachel, April and Amanda continued to visit appellant every other weekend and appellant continued to molest Rachel and April.
In January 1996, Rachel, April and Amanda visited appellant for the last time after they had warned him that if he continued to molest them they would no longer visit. Appellant stopped enforcing his visitation rights with the girls. In late 1997, April disclosed the abuse to her grandmother. Vanessa Breal was informed of the abuse after the holidays. On March 10, 1998, an investigator from the Tuscarawas County Job and Family Services interviewed the children about the abuse.
Thereafter, on December 31, 1998, the Tuscarawas County Grand Jury indicted appellant for one count of felonious sexual penetration, twenty-six counts of rape and two counts of gross sexual imposition. The charges were the result of appellant molesting Rachel and April for a seven-year period. Appellant entered a plea of not guilty to these charges. Appellant moved to disqualify the Tuscarawas County Prosecuting Attorney and her office because the prosecutor had previously served as the girls' guardian ad litem. The trial court granted the motion and ordered the Stark County Prosecutor's Office to represent the State of Ohio as special counsel in this matter.
Prior to trial, the state moved to dismiss twenty-four of the twenty-six counts of rape because the evidence could not sustain a conviction based on the time frames stated in the indictment. The trial court granted the state's motion. Appellant moved to dismiss one count of felonious sexual penetration based on insufficient evidence. The trial court also granted this motion. This matter proceeded to a jury trial on October 10, 2000. Following deliberations, the jury found appellant guilty as charged on the remaining counts. The trial court sentenced appellant to life in prison on one count of rape, an indefinite term of imprisonment of ten to twenty-five years on the second count of rape and a definite term of two years on each count of gross sexual imposition. The trial court ordered the sentences to be served consecutively. The trial court also classified appellant as a sexually oriented offender.
Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE INADEQUATE RECORDING DEVICE USED BY THE TRIAL COURT CONSTITUTED A VIOLATION OF CRIMINAL RULE 22 AND ARTICLE IV, SECTION 3, PARAGRAPH B(2) OF THE OHIO CONSTITUTION AND AS A RESULT DENIED DEFENDANT AN ADEQUATE TRANSCRIPT FOR APPEAL AND DUE PROCESS OF THE LAW.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED WITNESSES TO TESTIFY AS TO PREJUDICIAL EVIDENCE OF DEFENDANT'S CHARACTER AND OTHER UNINDICTED ACTS.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED NON-PROBATIVE, PREJUDICIAL PHOTOGRAPHS OF THE DEFENDANT'S DAUGHTERS INTO EVIDENCE.
 IV. THE VERDICT RENDERED BY THE JURY WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE AND WAS THEREFORE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant contends, in his First Assignment of Error, that the trial court violated Crim.R. 22 and Article IV, Section 3, paragraph B(2) of the Ohio Constitution when it used a faulty recording device to record the trial proceedings which resulted in an inadequate transcript for appeal. We disagree.
In the case sub judice, the trial court elected to have the appellant's trial recorded using a cassette recorder. Through no fault of either party, the cassette recorder failed to tape many parts of the trial. In fact, most of the side bars were completely inaudible and therefore, not transcribed. In an attempt to complete the missing portions of the transcript, defense counsel and the prosecutor, under App.R. 9(E), filed a statement in which they reconstructed the record to the best of their ability. Appellant claims this effort was not totally successful. Thus, appellant argues that due to the incompleteness of the transcript his conviction should be reversed or, in the alternative, a new trial should be granted.
Crim.R. 22 requires that "[i]n serious offense cases all proceedings shall be recorded." The state maintains that since the parties submitted a joint stipulation to supplement the record pursuant to App.R. 9(E), which addressed any material omissions related to appellant's assignments of error, appellant cannot demonstrate any material prejudice from the failure to completely record the sidebar conferences at trial. Therefore, any remaining omissions do not relate to the assignments of error and are not material for purposes of this appeal.
The Ohio Supreme Court addressed this issue in the case of State v.Palmer (1997), 80 Ohio St.3d 543, certiorari denied (1998), 525 U.S. 837. The Court explained:
 In a number of cases involving death penalty appeals, this court has clearly held that reversal of convictions and sentences on grounds of some unrecorded bench and chambers conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant has failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue. [Citations omitted.]
 In the case at bar, appellant has attempted to comply with App.R. 9 to correct the record and to reconstruct the unrecorded conferences. However, appellant has failed to demonstrate that his trial counsel ever requested recordation of the matters at issue and, most important, appellant has failed to affirmatively demonstrate any material prejudice resulting from the unrecorded matters to which he now takes exception. Id. at 554.
In applying the Palmer three-part test to the case sub judice, we conclude appellant was not denied due process of the law as a result of an inadequate transcript. As to the first prong, a request to record, the record does not indicate defense counsel requested that the side bars be recorded nor are there any objections that the side bars were not being properly recorded. However, for purposes of addressing this assignment of error, we assume defense counsel would have wanted the side bars recorded and would have objected to the failure to record the side bars had he known the recording was inadequate.As to the second prong of the three-part test, appellant complied by filing an App.R. 9(E) statement, with the assistance of the prosecutor, as to what occurred at the side bars pertaining to appellant's assignments of error. However, it is the third prong of the three-part test that appellant cannot meet. This prong requires that appellant demonstrate material prejudice. In demonstrating this prejudice, appellant must be specific and cannot rely upon general averments. Appellant has not specifically demonstrated prejudice since the remaining omissions from the transcript do not relate to any of his assignments of error. Therefore, appellant was not denied due process as a result of the inadequate recording device.
Appellant's First Assignment of Error is overruled.
 II
Appellant contends, in his Second Assignment of Error, that the trial court committed reversible error when it allowed witnesses to testify as to prejudicial evidence of his character and other unindicted acts. We disagree.
In support of this assignment of error, appellant cites Evid.R. 404, which provides, in pertinent part:
(A) Character evidence generally
 Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
* * *
(B) Other crimes, wrongs or acts
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. It is based upon this standard that we review appellant's Second Assignment of Error.
The first statement appellant challenges concerns a statement made by April Schilling as to why she was afraid of appellant. Specifically, April Schilling testified that appellant made repeated threats that he would kill April's mother and sisters if she ever disclosed the sexual abuse. Tr. Vol. II at 104, 118. April also testified that she submitted to appellant's sexual abuse because she was afraid that appellant would perpetrate those threats because she saw appellant hit his twin brother in the eye with a hammer. Id. at 118-119. Appellant claims the prosecution used this testimony to show that appellant would act in conformity with this previous act of violence.
We conclude the trial court did not abuse its discretion when it permitted April Schilling to testify about this violent act appellant perpetrated on his brother. The trial court properly admitted this testimony as it was relevant to prove the element of force. Other act evidence is admissible if it is relevant to prove an element of the offense. State v. Smith (1990), 49 Ohio St.3d 137, 140. In the casesub judice, the first two counts of rape and the fourth count of gross sexual imposition required the state to prove that appellant purposely compelled the victim to submit by "force or threat of force." April Schilling's testimony established that she knew of appellant's willingness to commit acts of violence on family members when he got mad. Thus, the testimony was admissible to prove what caused April Schilling's fear of appellant and was properly considered by the jury to determine whether April submitted to the sexual abuse due to a threat of force.
Appellant next challenges the admission of evidence that he digitally penetrated Rachel Schilling, in the bathtub, prior to engaging in sexual conduct with Rachel in his bedroom. Appellant argues these acts were outside the scope of the indictment and therefore, should not have been introduced as evidence at the trial. Appellant claims these statements were inflammatory and prejudicial. In response, the state contends the trial court properly admitted the evidence of foreplay between appellant and Rachel Schilling because it formed a part of the immediate background of the crime charged and was inextricably related. In support of this argument, appellant cites R.C. 2945.59, which is an exception to Evid.R. 404(B). This statute provides:
 In any criminal case in which motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Under the above statute, we conclude the trial court did not abuse its discretion when it admitted Rachel Schilling's testimony about the digital penetration because it is an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime. In State v. Thompson (1981), 66 Ohio St.2d 496, 498, the Ohio Supreme Court explained:
 `Other acts' testimony is relevant and, thus, admissible under the `scheme, plan or system' exception of R.C. 2945.59 where those acts form part of the immediate background of the crime charged, and hence are `inextricably related' to the act alleged in the indictment; that is, where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime.
Accordingly, we conclude the trial court did not abuse its discretion when it permitted Rachel Schilling to testify about the digital penetration as it was inextricably related to the sexual conduct both chronologically and factually.
Appellant's Second Assignment of Error is overruled.
 III
Appellant contends, in his Third Assignment of Error, that the trial court committed reversible error when it allowed non-probative, prejudicial photographs of Rachel and April Schilling to be admitted into evidence. We disagree.
Appellant challenges two photographs admitted into evidence at trial. One photograph showed April Schilling during the time period she lived with appellant. The other photograph showed Rachel Schilling, on her birthday, at a birthday party when she was eleven years old. The state had initially sought to introduce a group of family photographs depicting the girls. However, defense counsel objected and the trial court permitted the introduction of one photograph of each victim. The trial court selected the photographs to be introduced.
Appellant contends the photographs served no probative value, were not relevant and were used solely by the state to stir up emotions for the victims. In State v. Morales (1987), 32 Ohio St.3d 252, certiorari denied (1988), 484 U.S. 1047, the Ohio Supreme Court addressed the standard for determining the admissibility of photographs in a non-capital case:
 When considering the admissibility of photographic evidence under Evid.R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. [Citations omitted.] The admission or exclusion of such photographic evidence is left to the discretion of the trial court. [Citations omitted.] Accordingly, a trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence. Absent such danger, the photograph is admissible. Id. at 257.
We will not interfere with the trial court's balancing of probativeness and prejudice "* * * unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby." State v. Slagle
(1992), 65 Ohio St.3d 597, 602, certiorari denied (1993), 510 U.S. 833. We do not find the trial court abused its discretion when it admitted these photographs into evidence because they were relevant in addressing the element of force.
 The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. [Citation omitted.] State v. Eskridge
(1988), 38 Ohio St.3d 56, paragraph one of the syllabus.
Because of the time frame between the sexual abuse and the reporting of the abuse, these photographs were necessary to accurately portray the victims' size and strength during the period of the indictment.
Appellant's Third Assignment of Error is overruled.
 IV
In his final assignment of error, appellant maintains the jury's verdict was not supported by competent, credible evidence and was therefore against the manifest weight of the evidence. We disagree.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
In support of this assignment of error, appellant relies solely upon the fact that he testified at trial and denied all the criminal acts he allegedly committed against his daughter. Appellant therefore concludes that because he denied this conduct, the jury's verdict finding him guilty was against the manifest weight of the evidence. Appellant does not point to any evidence, in the record, that conflicts with his daughters' testimony except his own. Having reviewed the evidence presented in this case, we do not find the evidence weighs heavily against the conviction. Accordingly, the jury's verdict is not against the manifest weight of the evidence.
Appellant's Fourth Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.
Pursuant to App.R. 24(A)(2), appellant shall pay costs in this matter.
By: Wise, J., Hoffman, P. J., and Farmer, J., concur.