OPINION
{¶ 1} Defendant-appellant Mark Worthington appeals from his conviction and sentence in the Richland County Court of Common Pleas on one count of Involuntary Manslaughter, in violation of R.C. 2903.04 (B), a felony of the third degree. Plaintiff-appellee is the State of Ohio.
 {¶ 2} After getting off work at approximately 3:00 p.m. on October 6, 2003, appellant stopped at his fiancée Robin Richards' residence located at 63 North Trimble Road, Mansfield, Ohio. Appellant left the residence with his cousin Matthew Lyons and his brother Samuel Worthington to go to TGI Friday's in Mansfield, Ohio. Appellant ate wings and drank three draft beers while at TGI Friday's. Appellant was dropped off at his fiancée's house by his cousin Matthew Lyons. Prior to appellant leaving TGI Friday's, he had called Robin Richards on the phone and asked her if she wanted him to bring anything home. Ms. Richards asked appellant to bring home a fifth of Ancient Age Bourbon. Appellant brought home the fifth of bourbon that Robin had requested.
 {¶ 3} When appellant returned from T.G.I. Friday's, Robin was there with her children, Elizabeth Cochran and 21-month-old James Cochran, who nickname was "Bubby". Appellant ate dinner with Robin and her children. Later that evening at approximately 7:00 p.m. Efrom "Lenny" McGinnis a friend of the couple stopped by the residence. Mr. McGinnis brought with him a joint of marijuana. Robin, appellant and Mr. McGinnis smoked the marijuana. During the evening Robin Richards and appellant were drinking mixed drinks of bourbon and cola. Appellant's cousin Jonathan Lyons stopped at the residence to visit at approximately 7:30 p.m. Mr. Lyons brought with him a friend, Rick Mergel. Rick Mergel is a schizophrenic. Mr. Mergel did not drink any alcoholic beverages or smoke any marijuana during the time he was at the residence.
 {¶ 4} Mr. Lyons stayed about a half an hour at the residence. He left to meet his girlfriend at approximately 8:00 p.m. Rick Mergel remained at the residence with appellant, Robin Richards and Lenny McGinnis. Lenny McGinnis left Robin Richards' home at approximately 9:30 p.m. Rick Mergel, Robin Richards, appellant and Ms. Richards' two children, Elizabeth and "Bubby", remained at the residence.
 {¶ 5} Mr. Lyons returned to pick up Rick Mergel at the residence at approximately 12:15 a.m. When Mr. Lyons returned Rick Mergel and Robin Richards were in the living room of the residence. Robin told Mr. Lyons that appellant was sleeping. Robin went into the room where appellant and her son Bubby were sleeping to wake appellant up. Robin turned on the light and Mr. Lyons followed her into the bedroom. Robin and Mr. Lyons observed Robin's child, "Bubby" lying in the center of a bean bag chair. Appellant was sleeping partially on the floor, leaning up against the bean bag chair. Ms. Richards was unable to wake appellant. Ms. Richards and Mr. Lyons turned off the light and left the bedroom door partially open. Appellant testified that he initially lay down on the bottom bunk bed and went to sleep with "Bubby" who was lying on the bean bag chair. To get "Bubby" to lay down and stay in bed instead of getting up and running around, appellant laid down against the bean bag while "Bubby" was laying in the middle of it.
 {¶ 6} Approximately fifteen minutes later, Robin Richards went into the room a second time wanting to wake appellant. Ms. Richards testified that when she went into the bedroom a portion of appellant's body, specifically his chest, was on "Bubby" who was still lying in the center of the bean bag chair. Ms. Richards testified that she pushed appellant off "Bubby" and tried to wake "Bubby" up. "Bubby" was not breathing. 911 was called and an emergency squad responded. They were unable to resuscitate the child.
 {¶ 7} Forensic Pathologist and Deputy Medical Examiner of Summit County, Dr. Dorothy Dean, testified that the cause of James "Bubby" Cochran's death was a massive cerebral edema. Dr. Dean testified that the cause of death was consistent with the baby being laid on by an adult.
 {¶ 8} The following morning appellant submitted blood for a blood alcohol test and also submitted to a drug/marijuana urine screen. The blood alcohol test showed a BAC of 0.012 grams percent. A cannabiods/THC urine screen was negative. The THC metabolite urine test performed showed a THC quantitation in the urine of 9 nanograms per milliliter. The blood was tested by a second laboratory, Midtox Laboratories, for methyl alcohol. The second test showed no methyl alcohol in the blood stream.
 {¶ 9} The State called John Wyman, a toxicologist, to testify regarding whether the appellant was intoxicated at the time of the incident by extrapolating the blood/alcohol test results that appellant gave 14 hours after the incident. Dr. Wyman testified that he could not determine when the marijuana/THC exposure occurred. He testified that the level of metabolite indicated to him it would have been weeks before. With regard to the blood alcohol level, Dr. Wyman indicated he could not calculate the appellant's blood/alcohol level as of 11:30 p.m. on October 6, 2003 based on the test results from the next day because he lacked specific information about the appellant. However, the toxicologist testified that the "average person" would have had a blood alcohol content of between .12 and .24 percent at the time of the incident. Later in his testimony Dr. Wyman testified that in his opinion the appellant was intoxicated at the time of the incident.
 {¶ 10} Appellant was indicted by the Grand Jury of Richland County, Ohio on one count of Involuntary Manslaughter and one count of Reckless Homicide. On September 2, 2004, a three-day jury trial commenced in the case. On September 7, 2004, the jury returned a verdict of guilty on the charge of Involuntary Manslaughter and not guilty of the charge of Reckless Homicide. On September 7, 2004 appellant was sentenced to five years incarceration on the one count of Involuntary Manslaughter.
 {¶ 11} Appellant timely appealed and submits the following seven assignments of error for our consideration:
 {¶ 12} "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO READ THE PRIOR STATEMENT OF A PROSECUTION WITNESS UNDER THE GUISE OF REFRESHING RECOLLECTION, AND ADMITTING THE HEARSAY STATEMENTS WHICH VIOLATED THE APPELLANT'S SIXTH AMENDMENT RIGHT OF CONFRONTATION IN THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 13} "II. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO PRESENT EVIDENCE OF PRIOR BAD ACTS WHICH SUBSTANTIALLY EFFECTED APPELLANT'S RIGHT TO A FAIR TRIAL PURSUANT TO THE OHIO AND UNITED STATES CONSTITUTIONS.
 {¶ 14} "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY PERMITTING THE STATE'S EXPERT WITNESS TO TESTIFY TO BLOOD ALCOHOL LEVELS AND ABSORPTION AND ELIMINATION RATES WITHOUT THE STATE LAYING PROPER FOUNDATION AND IN VIOLATION OF EVIDENCE RULES 702, 703, AND 705.
 {¶ 15} "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN PERMITTING THE STATE'S WITNESSES TO TESTIFY REGARDING INTOXICATION WITHOUT LAYING PROPER FOUNDATION AND IN VIOLATION OF EVIDENCE RULES 702, 703, AND 705.
 {¶ 16} "V. THE TRIAL COURT ERRED IN ADMITTING AUTOPSY PHOTOS TO THE JURY WHICH HAD NO PURPOSE OTHER THAN TO INFLAME AND/OR ENRAGE THE JURORS SENSE OF PASSION AND WHICH WERE MORE PREJUDICIAL THAN PROBATIVE.
 {¶ 17} "VI. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO THE MAXIMUM SENTENCE AUTHORIZED FOR INVOLUNTARY MANSLAUGHTER WITHOUT COMPLYING WITH O.R.C. SECTION 2929.14(C) AND 2929.19 (B)(2).
 {¶ 18} "VII. APPELLANT'S RIGHT TO A FAIR TRIAL WERE PREJUDICE BY INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL.
 {¶ 19} "VIII. THE FINDING OF GUILTY IN THIS CASE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I. {¶ 20} In his first assignment of error, appellant argues he was denied due process of law when the court allowed the prosecutor to read a prior statement given by Rick Mergel. Appellant claims Mergel's prior statements could not be read during trial to refresh his recollection. The State argues the statements were properly read at trial as a recorded recollection exception to the hearsay rule under Evid.R. 803(5).
 {¶ 21} At the outset we note that not only did appellant's counsel not object to the reading of Mergel's prior statement to the jury, he utilized the statement during his cross-examination of Mergel. (1T. at 239; 253; 255; 257-28). Because no objection was made to the reading of the statement at the trial level, we must review this error under the plain error standard.
 {¶ 22} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 23} In U.S. v. Dominguez Benitez (June 14, 2004), 124 S.Ct. 2333,159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U.S. 279, 309 — 310 (1991) (giving examples).
 {¶ 24} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakosv. United States, 328 U.S. 750 (1946). To affect "substantial rights" . . . an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." Id. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240.
 {¶ 25} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004), 101 Ohio St.3d 118,120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 26} Evid.R. 803(5) provides:
 {¶ 27} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
{¶ 28} * *
 {¶ 29} "(5) Recorded recollection.
 {¶ 30} "A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."
 {¶ 31} According to this rule, foundational requirements for the use of a past recollection recorded include a showing that: 1) the witness has insufficient memory to accurately testify to crucial information; 2) that the witness can show through his or her testimony that the past recollection recorded was made or adopted when the matter was fresh in the witness's memory; and 3) that the past recollection recorded correctly reflects the knowledge the witness had at the time it was recorded. See also, State v. Baston (1999), 85 Ohio St.3d 418,709 N.E.2d 128. The staff notes relating to Evid.R. 803(5) specify:
 {¶ 32} "The rule makes explicit the requirement that the foundation for the introduction of the statement under this exception must be made by testimony of the witness himself. The assessment of trustworthiness is thereby focused upon the author and not upon some other person incident to the event."
 {¶ 33} The statement in the case at bar consisted of facts of which the witness had firsthand knowledge; the statement was made by Mergel to the police on the night of the incident while the witness had a clear and accurate memory of it; the witness lacked a present recollection of the details of what had occurred that night; and the witness stated that the memorandum was accurate. (1T. at 236-238). On cross-examination Mergel admitted that he couldn't really remember the events of that night. (Id. at 254-55; 257). Accordingly, Mergel had insufficient memory to accurately testify to crucial information. The trial court sustained appellant's objections to certain hearsay statements contained within Mergel's prior statement and gave the jury a cautionary instruction. (Id. at 240-41; 242).
 {¶ 34} Thus, we find that the admission of the statement of Mergel as past recollection recorded was proper, and that such did not amount to a denial of the defendant's right of confrontation or cross-examination.State v. Scott (1972), 31 Ohio St.2d 1, 10, 255 N.E.2d 344, 350.
 {¶ 35} Without extended discussion of the evidence, we should add that we believe the introduction of the written statement of Mergel could not be considered truly prejudicial in any event. Other evidence of guilt, admitted without objection, was overwhelming. Even if admission of the statement could be considered erroneous, we would conclude, from a review of the entire record, that such error would be `harmless beyond a reasonable doubt.' Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705; Harrington v. California (1969), 395 U.S. 250,89 S.Ct. 1726, 23 L.Ed.2d 284; Schneble v. Florida (1972), 405 U.S. 427,92 S.Ct. 1056, 31 L.Ed.2d 340. Based upon the record, we find that appellant has failed to demonstrate that a plain error affected his substantial rights.
 {¶ 36} Appellant's first assignment of error is overruled.
 II. {¶ 37} During the course of the trial, the prosecution called as a witness Officer Richard Miller. Officer Miller testified, over objection, that he has been a police officer for eleven years and has had approximately 24 contacts with the appellant during that time period. Officer Miller testified that on each occasion appellant has been intoxicated. Officer Miller further testified that on most of those occasions appellant was not arrested; nor was he a danger to himself or a risk to others. (2T. at 322-23). Out of the presence of the jury Officer Miller informed the court that appellant had been arrested for a bar fight and possession of marijuana. (Id. at 323-24).
 {¶ 38} Appellant contends that the testimony of Officer Miller was inadmissible as it did not come within the scope of Evid. R. 404 and R.C. 2945.59, which permits, for limited purposes, proof of other acts of a defendant in a criminal case. The state maintains that Officer Miller's testimony was properly admissible under that statute, as tending to show appellant's absence of mistake or accident, and further that the evidence was admissible under Evid. R. 406 as evidence of appellant's habit.
 {¶ 39} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, the Supreme Court held in addition to those reasons listed in the Rule, evidence of other bad acts may be admissible to prove identity. However, because Evid. R. 404(B), and R.C. 2945.59, codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict, Broom, syllabus by the court, paragraph 1.
 {¶ 40} In State v. Burson (1974), 38 Ohio St.2d 157, 311 N.E.2d 526, the Ohio Supreme Court made the following observation: "[n]owhere do the words `like' or `similar' appear in the statute. Prosecutors and trial courts should be particularly aware that evidence of other acts of a defendant if admissible only when it `tends to show' one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question." Id. at 158,311 N.E.2d at 528. The Burson court further noted "[w]hen the purpose of evidence of other acts is to show the absence of mistake or accident on the part of the defendant in committing the offense charged, it must be shown that a connection, in the mind of the defendant, must have existed between the offense in question and the other acts of a similar nature. See State v. Moore (1948), 149 Ohio St. 226, 78 N.E.2d 365. The other acts of the defendant must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question. The evidence is then admissible to the extent it may be relevant in showing the defendant acted in the absence of mistake or accident." Id. at 159, 311 N.E.2d 528-29.
 {¶ 41} The record in this case makes clear that the State intended for Officer Miller's testimony to show that appellant was intoxicated on the night of the incident. Indeed, that purpose was the only possible one for which the evidence could be offered. Acts occurring during a random time span of eleven years do not possess the temporal, modal and situational relationship necessary to show purposeful action in the commission of the offense in question. Officer Miller's testimony merely confirmed that appellant had a drinking problem. There is nothing in the record, contrary to appellee's assertions, to show that this witness observed appellant engage in conduct or create a condition that presents a risk of physical harm to him, another person or the property of another person. R.C.2917.11(B) (2). As this Court has noted in construing R.C. 2917.11(B) (2): "R.C. 2901(A) (7) defines risk as `. . . a significant possibility as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist.'
 {¶ 42} "The committees comment to the statute states, `. . . this section is aimed at particular conduct rather than at the condition.' Appellee notes the comment states, `It is also a violation if, when alone and drunk or under the influence of drugs, he [defendant] attempts a tight rope on a bridge parapet or curls to sleep in a doorway in freezing weather.'" State v. Pennington (Nov. 16, 1998), 5th Dist. No. 1998CA00137. (Emphasis added).
 {¶ 43} Because the evidence of Officer Miller's contact with the appellant was admitted for the sole purpose of showing that appellant had a character trait of drinking to excess and that he acted in conformity with his character on the night of the incident by becoming intoxicated, we conclude that Officer Miller's testimony on this subject was inadmissible character evidence under Evid. R. 404.
 {¶ 44} The suggestion that Officer Miller's testimony constituted evidence of appellant's "habit" of excessive drinking is equally unpersuasive. Evid. R. 406 allows the introduction of evidence of the habit of a person for the purpose of proving that the person acted in conformity with his habit on a particular occasion. The Rule states: "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice". In Reyes v. Missouri Pacific R.R. Co. (5th Cir. 1979), 589 F.2d 791, the Court made the following observation "[p]erhaps the chief difficulty in deciding questions of admissibility under Rule 406 arises in trying to draw the line between inadmissible character evidence and admissible habit evidence. Quite often the line between the two may become blurred:
 {¶ 45} "Character and habit are close akin. Character is a generalized description of one's disposition, or one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. `Habit,' in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, family life, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic. McCormick on Evidence s 195 at 462-63 (2d ed. 1972). Although a precise formula cannot be proposed for determining when the behavior may become so consistent as to rise to the level of habit, `adequacy of sampling and uniformity of response' are controlling considerations. Notes of Advisory Committee on Proposed Rules, Fed.R.Evid. 406, 28 U.S.C.A. at p. 153. See also Wilson v. Volkswagen of America, 561 F.2d 494 (4th Cir. 1977), Cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). Thus, the probative force of habit evidence to prove intoxication on a given occasion depends on the `degree of regularity of the practice and its coincidence with the occasion.' McCormick on Evidence s 195 n. 16 (2d ed. 1972)". Id. at 794-95; See also, State v. Reed (1996),110 Ohio App.3d 749, 753, 675 N.E.2d 77, 79.
 {¶ 46} We do not undertake here to prescribe the precise quantum of proof necessary to transform a general disposition for excessive drinking into a "habit" of intemperance; we simply find that 24 observations of intoxication spanning an eleven year period are of insufficient regularity to rise to the level of "habit" evidence. The most that can be said is that Officer Miller observed appellant in an intoxicated state an average of two times per year. The record contains no evidence of appellant's regular practice of meeting a particular kind of situation with a specific type of conduct. Consequently, we hold the evidence to be inadmissible under Evid. R. 406 as well.
 {¶ 47} The admission of prior bad acts is deemed harmless unless there is some reasonable probability the evidence contributed to the accused's conviction, City of Columbus v. Taylor (1988), 39 Ohio St.3d 162,529 N.E.2d 1382.
 {¶ 48} We have reviewed the record, and we find there is no reasonable probability this evidence actually contributed to the accused conviction. The appellant himself testified that on the night in question he consumed three pint glass size beers, two "tokes" from a marijuana joint, and three or four bourbon and colas. (3T. at 576; 596). Appellant further admitted to drinking on as many as three nights per week. (Id. at 600). Appellant further testified that he drinks and smokes pot while watching his own children. (Id. at 603-4). Appellant testified that on the night in question he "had a little bit of a buzz." (Id. at 610). Accordingly, the record contains ample evidence from which the jury could conclude that appellant was intoxicated on the night in question.
 {¶ 49} We find while Officer Miller's testimony concerning his previous encounters with appellant may have been inadmissible, there was no prejudice to the appellant.
 {¶ 50} Appellant's second assignment of error is overruled.
 III. {¶ 51} In his third assignment of error, appellants maintain that the trial court erred in admitting the expert testimony of John Wyman, a forensic toxicologist regarding blood alcohol levels and absorption and eliminates rates.
 {¶ 52} Appellant does not contest Wyman's expert qualifications. Rather, appellant contends that the State failed to lay a proper foundation for his testimony that appellant was intoxicated at the time of the incident. We disagree.
 {¶ 53} Appellant did not object at trial to the admission of the testimony. Accordingly, we must review this error under the plain error standard as set forth in our review of appellant's first assignment of error, supra.
 {¶ 54} At issue in this assignment of error is the application of two of the Ohio Rules of Evidence: Evid.R. 703 and 705. Evid.R. 703 states that, "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703. Evid.R. 705 states that, "The expert may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
 {¶ 55} The State's toxicologist testified that the blood-alcohol content of the blood sample was .012, but he was unable to give an opinion as to what appellant's blood-alcohol level would have been at the time of the incident because he did not have sufficient information to extrapolate. However, the toxicologist testified that the "average person" would have had a blood alcohol content of between .12 and .24 percent at the time of the incident. (3T. at 541). Finally, the toxicologist testified opined that the appellant was intoxicated. (Id. at 544).
 {¶ 56} One court has summarized the rising and falling process of alcohol in the blood as follows:
 {¶ 57} "As alcohol is consumed, it passes from the stomach and intestines into the blood, a process referred to as absorption. When the alcohol reaches the brain and nervous system, the characteristic signs of intoxication begin to show. The length of time necessary for the alcohol to be absorbed depends on a variety of factors, including the presence and type of food in the stomach, the person's gender, the person's weight, the person's age, the person's mental state, the drinking pattern, the type of beverage consumed, the amount consumed, and the time period of alcohol consumption. At some point after drinking has ceased, the person's BAC will reach a peak. After the peak, the BAC will begin to fall as alcohol is eliminated from the person's body. The body eliminates alcohol through the liver at a slow but consistent rate". Mata v. State,46 S.W.3d 902, 909 (Tex.Crim.App. 2001) (footnotes and citations to numerous scientific and legal authorities omitted).
 {¶ 58} The legislature, on the basis of extensive research into the problem of drunken drivers, has determined and statutorily established that a blood alcohol level of.08 percent has an adverse effect on an individual's coordination and control and that an individual with that blood alcohol level is incapable of safely operating a motor vehicle. R.C. 4511.19.
 {¶ 59} In the case at bar, the State was not required to prove the appellant had a blood alcohol level of .08 percent or more in order to convict him. Rather, the State need only prove the appellant was intoxicated. A blood alcohol level of .08 percent merely entitles the State to a presumption of intoxication, but it is not the only proof of intoxication.
 {¶ 60} We find that appellant's objections go to the weight rather than the admissibility of the toxicologist's testimony. The parties are, of course, at liberty to attack the evidence and to seek to demonstrate through cross-examination or the introduction of other evidence that the test results for an "average person" do not accurately reflect the blood-alcohol level of appellant at the time of the offense. The jury can then decide what weight to give to the test results.
 {¶ 61} We find that appellant's substantial rights were not affected. The record contains ample additional evidence from which the jury could conclude that appellant was intoxicated at the time of the incident. Appellant has failed to demonstrate that the outcome of the trial would have been different had the evidence been excluded by the trial court.
 {¶ 62} Appellant's third assignment of error is overruled.
 IV. {¶ 63} In his fourth assignment of error appellant contends that the trial court committed plain error in allowing several police officer's to opine that appellant was intoxicated without qualifying the officers as expert witnesses. We disagree.
 {¶ 64} In State v. Schmitt (2004), 101 Ohio St.3d 79, 801 N.E.2d 446, the Ohio Supreme Court made the following observation: "[i]t is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. Columbus v.Mullins (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. See, also, State v. McKee (2001), 91 Ohio St.3d 292, 296, 744 N.E.2d 737." Id. at 83, 801 N.E.2d at 450.
 {¶ 65} In Mullins, supra, the court noted: "[a]n opinion with reference to intoxication is probably one of the most familiar subjects of nonexpert evidence, and almost any lay witness, without having any special qualifications, can testify as to whether a person was intoxicated. It follows that, where one says that in his opinion a person is intoxicated, he is really stating it as a fact rather than an expert opinion. In any event, we do not hold that admission of such evidence is prejudicially erroneous." Id. at 421-22.
 {¶ 66} In the case at bar, each officer personally observed appellant on the night in question. Each officer testified based upon his training and experience the appellant was intoxicated. We find no error, plain or otherwise, in the admission of the testimony of the officers.
 {¶ 67} Appellant's fourth assignment of error is overruled.
 V. {¶ 68} Appellant, in his fifth assignment of error, argues that the trial court committed error by allowing the jury to view photographs of the decedent-victim. We disagree.
 {¶ 69} Appellant did not object at trial to the admission of the photographs. Accordingly, we must review this error under the plain error standard as set forth in our review of appellant's first assignment of error, supra.
 {¶ 70} "When considering the admissibility of photographic evidence under Evid.R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. See State v. Tingler (1972), 31 Ohio St.2d 100,103-104, 285 N.E.2d 710, 713; State v. Rahman (1986), 23 Ohio St.3d 146,152, 492 N.E.2d 401, 407. The admission or exclusion of such photographic evidence is left to the discretion of the trial court. State v. Hill
(1967), 12 Ohio St.2d 88, 232 N.E.2d 394, paragraph two of the syllabus;State v. Wilson (1972), 30 Ohio St.2d 199, 203-204, 283 N.E.2d 632, 636;State v. Tingler, supra. Accordingly, a trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence. Absent such danger, the photograph is admissible." State v. Morales (1987),32 Ohio St.3d 252, 257, 513 N.E.2d 267, 273.
 {¶ 71} The fact a photograph is gruesome is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels it would prove useful to the jury. State v. Woodards (1966),6 Ohio St.2d 14, 25, 215 N.E.2d 568. In State v. Morales, supra, the Ohio Supreme Court determined that numerous gruesome photographs depicting a murder scene and the victim's body both before and during the coroner's examination were neither repetitive nor cumulative, and that the probative value of the photographs outweighed the danger of unfair prejudice to the defendant. Id. at 256, 513 N.E.2d 267. In State v.Landrum (1990), 53 Ohio St. 3d 107, 559 N.E.2d 710, the court reached the same conclusion with regard to a close-up photograph depicting the murder victim's slit throat. Id. at 121, 559 N.E.2d 710. State v. Woodward,
10th Dist. No. 03AP3-98, 2004-Ohio-4418 at ¶ 50.
 {¶ 72} We have reviewed the record. The photographs serve purposes that have time and again been found sufficiently probative to overcome their inherently disturbing nature. The photographs helped the jury appreciate the nature of the crimes, and they illustrated the coroner's testimony. See State v. Coley (2001), 93 Ohio St.3d 253, 266,754 N.E.2d 1129; State v. Tibbetts (2001), 92 Ohio St.3d 146, 156-157,749 N.E.2d 226; State v. Evans (1992), 63 Ohio St.3d 231, 250-251,586 N.E.2d 1042; State v. Arlt, 5th Dist. No. 2002CA00265, 2003-Ohio-1252 at ¶ 34.
 {¶ 73} State's Exhibit 5-A was a photograph of the decedent-child. (1T. at 130). State's Exhibit 5-B was used by the corner to illustrate scratches and injuries to the child's face. (Id. at 132). State's Exhibit 5-C illustrated the child-decedent's brain and was used by the corner to explain the cause of death from a massive cerebral edema. (Id. 132-37; 139-41).
 {¶ 74} We conclude that, given the substantial probative value of the photographs and the fact that they were not particularly inflammatory, coupled with the consequent lack of any unfair prejudice to Appellant, the trial court did not abuse its discretion in admitting the three photographs into evidence. See Coley, 93 Ohio St.3d at 265, 754 N.E.2d 1129
("Decisions on the admissibility of photographs are `left to the sound discretion of the trial court,'" quoting State v. Slagle (1992),65 Ohio St.3d 597, 601, 605 N.E.2d 916). See, also, Landrum,53 Ohio St.3d at 121, 559 N.E.2d 710; State v. Morales (1987),32 Ohio St.3d 252, 513 N.E.2d 267.
 {¶ 75} In sum, appellant has not met his burden of showing prejudice under Rule 52(b). Because the trial court did not err in allowing the photographs into evidence at trial, appellant's substantial rights were not violated.
 {¶ 76} Appellant's fifth assignment of error is overruled.
 VI. {¶ 77} In his sixth assignment of error, appellant challenges the trial court's imposition of a maximum sentence.
 {¶ 78} Pursuant to R.C. 2929.14(C), a trial court may impose the maximum sentence under the following conditions:
 {¶ 79} "(C) * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D) (3) of this section, and upon certain repeat violent offenders in accordance with division (D) (2) of this section."
 {¶ 80} This statute is to be read in the disjunctive. See, State v.Comersford (June 3, 1999), Delaware App. No. 98CAA01004, unreported. Accordingly, a maximum sentence may be imposed if the trial court finds any of the above listed categories apply.
 {¶ 81} In State v. Redman, Stark App. No. 2002CA00097, 2003-Ohio-646, this Court held: "While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. As stated in R.C. 2929.19(B)(2)(d): The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 82} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 83} Thus, a trial court has discretion to impose a maximum sentence if it determines one of the factors listed in R.C. 2929.14(C) exists, and it explains its reasons for imposing a maximum sentence as required by R.C. 2929.19(B)(2)(d).
 {¶ 84} At the sentencing hearing, the trial court stated: "I am required to weigh a number of factors here. First of all, in regard to whether recidivism is likely, because that is a factor which requires a greater sentence, in this particular case, the defendant has a history of criminal convictions dealing with alcohol. And in addition he showed a pattern of alcohol and drug abuse related to this particular offense and does not acknowledge he even has a problem. He claims he is not an alcoholic. And I am not persuaded that he has shown genuine remorse.
 {¶ 85} "In terms of seriousness factors, the most troubling factor of all is that the injury was exacerbated by the victim's physical age, a 21-month-old baby. The victim suffered serious physical harm. The worst physical harm he suffered is death.
 {¶ 86} "And, finally, the offender's relationship with the victim facilitated the offense. [Appellant] was supposed to be this boy's caregiver, one of the caregivers, when he is drinking and drugging around the child and subjecting the child to what happened to him here.
 {¶ 87} "To me, this is the worst form of the offense of involuntary manslaughter we can image with a 21-month-old child . . . who was killed by being suffocated, being laid on for a period of over 15 minutes. Can't image a more excruciating death or a more senseless death. All because you have not learned to exercise responsible control of your alcoholism, because other people around you also were not willing to exercise control over alcoholism.
 {¶ 88} "And, consequently, because you have committed the worst from of the offense, Mark, I need to sentence you to a 5-year period of incarceration". (3T. at 6896-91).
 {¶ 89} Based upon the foregoing, we find the trial court provided sufficient reasons for imposing the maximum sentence.
 {¶ 90} Appellant's sixth assignment of error is overruled.
 VII. {¶ 91} In his seventh assignment of error, appellant argues he was denied effective assistance of counsel. We disagree.
 {¶ 92} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 93} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 94} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 95} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 96} Essentially, appellant argues that his trial attorney's failures to raise in the trial court the same issues and arguments that he now presents on appeal rendered his performance ineffective. Appellant offers no additional grounds not addressed in the previous assignments of error.
 {¶ 97} Since we have found no grounds for reversal of his convictions in any of appellant's assignments of error, we obviously do not consider his counsel ineffective in this regard.
 {¶ 98} Accordingly, we find no prejudice to appellant as a result of trial counsel's actions in this case.
 {¶ 99} Appellant's seventh assignment of error is overruled.
 VIII. {¶ 100} In his eight assignment of error appellant contends that the verdict was against the sufficiency of the evidence. We disagree.
 {¶ 101} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar.15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion."State v. Thompkins (1997), 78 Ohio St.3d 380, 390.
 {¶ 102} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds in State v. Smith
(1997), 80 Ohio St.3d 89.
 {¶ 103} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence.State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Thompkins, 78 Ohio St.3d at 386.
 {¶ 104} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Cuyahoga Falls v. Scupholm
(Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735.
 {¶ 105} Appellant in the case at bar was convicted of Involuntary Manslaughter in violation of R.C. 2903.04(B) which states in pertinent part as follows:
 {¶ 106} "(B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor misdemeanor."
 {¶ 107} The underlying misdemeanor offense alleged by the State in the case at bar was Disorderly Conduct in violation of R.C. 2917.11(B)(2) which states in pertinent part as follows:
 {¶ 108} "(B) No person, while voluntarily intoxicated, shall do either of the following:
 {¶ 109} "* * *
 {¶ 110} "(2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another."
 {¶ 111} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller
(2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 112} Specifically, appellant contends that the State failed to produce sufficient evidence that he engaged in conduct or created a condition that presented a risk of physical harm to himself or another while voluntarily intoxicated.
 {¶ 113} As this Court has noted in construing R.C. 2917.11(B) (2): "R.C. 2901(A) (7) defines risk as `. . . a significant possibility as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist.'
 {¶ 114} "The committees comment to the statute states, `. . . this section is aimed at particular conduct rather than at the condition' . . . the comment states, `It is also a violation if, when alone and drunk or under the influence of drugs, he [defendant] attempts a tight rope on a bridge parapet or curls to sleep in a doorway in freezing weather.'"State v. Pennington (Nov. 16, 1998), 5th Dist. No. 1998CA00137.
 {¶ 115} The appellant himself testified that on the night in question he consumed three pint glass size beers, two "tokes" from a marijuana joint, and three or four bourbon and colas. (3T. at 576; 596). Appellant further admitted to drinking on as many as three nights per week. (Id. at 600). Appellant further testified that he drinks and smokes pot while watching his own children. (Id. at 603-4). Appellant testified that on the night in question he "had a little bit of a buzz." (Id. at 610). Several police officers who had personal contact with appellant testified that based upon that conduct and their training and experience appellant was intoxicated at the time of the incident. (1T. at 275-76; 294-95). Effrom "Lenny" McGinnis testified that appellant was intoxicated, and that appellant and Ms. Richards had finished the fifth of bourbon prior to the incident. (1T. at 149-51). Accordingly, the record contains ample evidence from which the jury could conclude that appellant was intoxicated on the night in question.
 {¶ 116} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant was voluntarily intoxicated at the time of the incident.
 {¶ 117} Appellant's main argument is that there was insufficient evidence to prove that he engaged in conduct or created a situation that presented a risk of physical harm to "Bubby."
 {¶ 118} While it is possible to roll upon a child sleeping in a bed or, as in this case, a beanbag chair, the appellant engaged in conduct or created a situation that presented a risk of physical harm to "Bubby." The act of becoming voluntarily intoxicated presented the risk that "Bubby" would be unable to wake the appellant, and that appellant would not be awakened by the struggling child underneath him.
 {¶ 119} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of Disorderly Conduct and Involuntary Manslaughter.
 {¶ 120} We hold, therefore, that the state met its burden of production regarding each element of the crime of Involuntary Manslaughter and, accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 121} Although appellant presented his testimony and cross-examined the witnesses in an attempt to establish that he was not intoxicated and that the incident was an accident, the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 122} Appellant's eighth assignment of error is overruled.
 {¶ 123} The judgment of the Richland County Court of Common Pleas is affirmed.
Gwin, J., Boggins, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed. Costs to appellant.